## Nevada County Bank *v.* Gee.

### Opinion delivered July 9, 1917.

1. DEEDS—ACKNOWLEDGMENT, LACK OF—PROOF.—It is admissible to show that a grantor in a deed or mortgage never actually appeared before the officer purporting to have taken his acknowledgment, and that the grantor made no acknowledgment at all.

2. ACKNOWLEDGMENTS—PRESUMPTION AS TO ACTS OF OFFICER.—Great weight is given to the official act of a notary public or other officer who certifies to the acknowledgment of an instrument; and the impeachment of his certificate involves a charge of criminal violation of duty on the part of the certifying officer.

3. ACKNOWLEDGMENT—IMPEACHMENT OF CERTIFICATE.—*Held*, under the evidence that an acknowledgment to a mortgage was valid, although the wife of the mortgagor denied that she had acknowledged her signature.

Appeal from Nevada Chancery Court; *James D. Shaver,* Chancellor; reversed.

*H. E. Rouse,* for appellant.

1. A notary public is a public officer authorized to take acknowledgments which are received as evidence of the facts stated, and are *prima facie* true. Kirby's Di-

gest, § 7155; 107 Ark. 272; 62 *Id.* 265. A strong presumption exists in favor of the truth where the certificate is regular. 1 Corp. Jur. 893-4, § § 275, 277. Gordon testifies that he took Mrs. Gee's acknowledgment as he certified to it. 96 Ark. 566; 104 *Id.* 226; 107 *Id.* 16.

2. If taken over the telephone it was valid. 13 Am. St. Rep. 156.

3. The testimony shows that Mrs. Gee acknowledged the instrument personally. The acknowledgment will relate back to the date of the deed. 1 Corp. Jur., § § 133, 160.

4. In order to impeach the certificate of acknowledgment the evidence must be clear, cogent and convincing beyond reasonable certainty. 27 App. Cases 401; 103 U. S. 544; 109 *Id.* 573; 117 Ark. 321; 96 *Id.* 564; 104 *Id.* 226; 174 Ill. App. 581; 136 Ky. 281; 149 N. Y. 71; 96 Ark. 566; 174 S. W. 562. There is no proof of fraud. 1 Corp. Jur. 894-5, § 278. The burden of proof was on the married woman to show positively that she did not acknowledge it. 117 Ark. 321; 174 S. W. 562.

5. Children are interested witnesses. 55 N. E. 349; 69 Ill. 666. Intimate social or blood relationship often deprives testimony of its conclusive effect. 92 Hun. (N. Y.) 37; 58 *Id.* 121; 12 Misc. (N. Y.) 81. See also 55 Ala. 339; 96 Ark. 566; 103 U. S. 544; 109 *Id.* 577; 55 N. E. 349.

6. The wife is estopped. 83 N. W. 433; 114 Minn. 146; 56 Ark. 217; 86 *Id.* 575; 74 *Id.* 136, etc.

7. Gordon, the notary, was not a stockholder in the bank, nor disqualified by a financial interest therein. 1 Corp. Jur. 894-5, § § 277, 279; 129 N. Y. S. 238; 130 *Id.* 62; 41 S. W. 932; 149 N. W. 758; 97 Ark. 374; 114 *Id.* 344. But if he was the owner of stock, that would not invalidate the acknowledgment. 170 S. W. 99; 181 Ala. 272; 139 Pac. 1066; 181 S. W. 961; 108 Pac. 1003; 94 Ark. 241; 56 *Id.* 484; 117 Ark. 321, and many others.

*John N. Cook,* for appellees.

1. All the evidence except his own shows that Gordon never took Mrs. Gee's acknowledgment. Kirby &

Castle's Digest, § 840. No court in any State with laws similar to ours has ever held an acknowledgment over a telephone to be good. 30 L. R. A. (N. S.) 358; 83 S. W. 431; 1 C. J., § 144, p. 819.

2. The doctrine of estoppel does not apply. 63 Ark. 289; 96 *Id.* 609; 97 *Id.* 43.

3. A deed to a homestead not joined in, and acknowledged by the wife is void. Kirby & Castle's Digest, § 4311; 97 Ark. 43.

4. A certificate of acknowledgment is not conclusive, but may be rebutted. Kirby & Castle's Digest, § 850; 114 Ark. 435; 117 *Id.* 327; 81 Kans. 76.

5. Appellees have met the burden of proof squarely, and all the evidence and circumstances prove she did not acknowledge the instrument, except Gordon's own testimony. He was a stockholder in the bank and interested.

6. Relatives are not disqualified and usually they are the only ones who know the facts. 1 R. C. L., § 88, p. 297. The finding of the chancellor is not clearly against the preponderance of the evidence. 4 Crawford's Digest, p. 75, par. 102a.

### STATEMENT BY THE COURT.

William Gee and N. T. Gee, his wife, instituted this action in the chancery court against the Nevada County Bank to cancel and set aside as a cloud upon their title a mortgage on their homestead in the town of Prescott on the ground that the wife never appeared before the notary and acknowledged the mortgage. The bank filed an answer in which it denied the allegations of the complaint and also filed a cross-complaint asking for a forclosure of its mortgage.

During and prior to 1912, William Gee and J. C. White and H. J. Wilson, his sons-in-law, were engaged in the general mercantile business at Prescott, Arkansas, under the firm name of H. J. Wilson & Co. They transacted their banking business with the Nevada County Bank. In January, 1913, the firm owed the bank notes aggregating $2,500.00. Subsequently the firm's name

was changed to W. H. Gee & Co., but the partners remained the same. They wished to borrow an additional $1,000 from the bank. In order to do this, William Gee offered to mortgage his homestead to secure this sum as well as the amounts already owed the bank. A deed which was understood between the parties to be a mortgage was prepared and turned over to William Gee to be signed. Several days thereafter, William Gee returned the deed to O. B. Gordon, cashier of the bank. It bore the signatures of William Gee and N. T. Gee, his wife. Gordon took the acknowledgment of William Gee to the deed or mortgage, and at the request of William Gee, called up N. T. Gee to take her acknowledgment over the telephone. Some person at the home of William Gee answered and acknowledged the deed as N. T. Gee. The deed and acknowledgment was dated April 2, 1913. Gordon then took the deed to the attorney of the bank and told him about having taken the acknowledgment of Mrs. Gee over the telephone. The attorney told him that he was afraid of an acknowledgment taken over the telephone and requested Gordon to have the deed acknowledged by Mrs. Gee in his presence. Gordon said that he went to the home of Mr. and Mrs. Gee in the town of Prescott on that evening or the next morning and took the acknowledgment of Mrs. Gee.

Mrs. Gee testified that she did not appear before Gordon and acknowledge the deed. She admitted that she signed it when presented to her by her husband, but stated that she did this under the compulsion of her husband. She stated that she was made to sign the deed by her husband; that he told her he would leave her and take his life if she did not sign it; that she was sick with rheumatism and unable to get out and do anything at the time; that she knew O. B. Gordon when she saw him, but never talked with him in her life; that she had not seen him for over two years; that the consideration for the deed was an overdraft at the bank, but she does not know whether money was to be advanced in the future. On cross-examination she stated that at the time she was

signing the deed, she and Mr. Gee did not talk about her acknowledging it, but that she told him later that she had not acknowledged it; that her husband told her that Gordon would be up to take her acknowledgment, but that she said she was not going to sign it.

Inez E. White, a daughter of Mr. and Mrs. Gee, and the wife of John C. White, a partner in the firm, testified that she was present the day the deed was signed. She stated that her father made her mother sign the deed under threats to break up their home, but she does not state the language that was used.

William Gee testified that the land in question was his homestead and that the bank pressed him on account of the overdrafts of the firm, and wanted him to give a mortgage on his home to secure it; that he told Gordon that he would have to have some more money if he did that, and Gordon agreed to let him have it; that the firm got more money after the mortgage was executed and the notes were renewed from time to time. On cross-examination he stated that his wife signed the deed in his presence; that he told his wife that Gordon would take her acknowledgment over the telephone, and that she told him she would not acknowledge it; that he first found out that his wife had not acknowledged the deed about a month afterward, but never said anything to the officers of the bank about it.

W. W. Rice, a physician who married a relation of the Gees, testified that about the first of April he was called to treat Mrs. Gee; that she was very nervous, was suffering with rheumatism and a kind of neurasthenia; that she was in bed when he went to see her; that he does not remember how long she was sick, but that her husband came down to his office and paid him $3.00, either on the 4th or 5th of April, 1913.

John C. White testified that Mr. Gordon gave Mr. Gee the deed in question and asked him to have Mrs. Gee sign it; that Mr. Gee carried it home and brought it back later to the store, and kept it there several days; that Mr. Gordon came by there one day and Mr. Gee gave him the

deed; that Mr. Gordon stated he would call Mrs. Gee over the telephone and take her acknowledgment; that later he came back and said that he had gotten her over the telephone; he further stated that Mrs. Gee was sick in bed for several days about the first of April, and that he carried his wife by there in the morning and came back for her after business hours were over.

Inez White, his wife, testified that her mother took sick on April 2, 1913; that she went there to say with her every day while she was sick, and that she was sick for several days; that she would get there in the morning after she had gotten breakfast and attended to her children, and would remain at her mother's home throughout the day; that her mother never acknowledged the deed while she was there; and that she lived in another part of the town.

Jewel Wilson, another daughter, testified that she lived near her mother; that her mother spent the day with her on April 1, 1913; she wasn't well on that day, and on the next day became so sick that she had to have the services of a physician and was confined to her bed for several days; that she stayed with her mother most of the time during the day while she was sick, and that her mother never acknowledged the deed while she was there.

O. B. Gordon testified that he knew Mrs. Gee well; that they had both lived in the town of Prescott for many years; that he first called her up over the telephone and took her acknowledgment; that when he informed the attorney for the bank that he had taken the acknowledgment by telephone, that the attorney said that he was afraid of an acknowledgment taken that way, and insisted that she acknowledge it in the presence of Gordon; that he on that day or the next morning went to the home of Mrs. Gee and took her acknowledgment in person; that she did not seem excited and acknowledged the deed voluntarily; that her husband was not present at the time; that he was at the time a duly qualified and acting notary public; that he thinks he took the acknowledgment on the evening of April 2, 1913, or the next morning.

It was also shown in proof on the part of the bank that the firm went into bankruptcy in August, 1914, and at that time filed a statement admitting the execution of the mortgage on the homestead of William Gee, and that they owed the bank over $3,500, which was secured by the mortgage on the homestead.

The record of the transfer of the stock as the same appeared in the county clerk's office was introduced and one part of it shows that in the annual statement filed January 28, 1913, it is recited that O. B. Gordon had forty shares of stock in the bank. This record also shows the following: "Transfer of stock in said Nevada County Bank filed October 6, 1915, upon A. A. Gordon, O. B. Gordon (40 shares), under date of January 16, 1913."

The shares of stock were of the par value of $25 each. O. B. Gordon first testified that he owned shares of stock in the bank in 1913, but subsequently qualified that statement by saying that he did not own any shares of stock, but his brother had deposited with him forty shares of stock as collateral security for a debt he owed the bank, and on which, he, O. B. Gordon, was surety.

The chancellor found the issues in favor of the plaintiff and the decree was accordingly entered canceling the deed or mortgage as a cloud upon the title of the plaintiff. The defendant has appealed.

HART, J., (after stating the facts). (1) This court has recognized that there is a difference between a case where a party admits the acknowledgment of a deed or mortgage, and claims that such acknowledgment was procured by fraud or duress and a case where the grantor denies that he or she ever acknowledged the instrument. It is always admissible to show that a grantor in a deed or mortgage never actually appeared before the officer purporting to have taken his acknowledgment, and that the grantor made no acknowledgment at all. *Polk* v. *Brown,* 117 Ark. 321. In that case the court said that where there is a claim that the grantor did not make any acknowledgment whatever before the officer, the weight of the evidence should not be affected by any particular rule peculiar to the subject, but that the court should be

left to determine from all the circumstances disclosed whether the certificate of acknowledgment is true or false. The court said:

"In our opinion, the weight of the evidence should not be affected by any particular rule peculiar to the subject, but rather the court should be left to determine from all the circumstances disclosed whether the certificate of acknowledgment is true or false. This much may be said, however, under chapter 29 of Kirby's Digest, a proper acknowledgment is an essential part of the execution of a conveyance. The acknowledgment is an official act done under an official oath and is protected under the presumption the law necessarily indulges in favor of the acts of its own officers. Under our statute, one of the means of evidence upon which a deed can be admitted to record is a certificate of proof or acknowledgment of an officer authorized by our statute to take such proof or acknowledgment. The burden of proof undoubtedly rests upon the person denying the falsity of the certificate which carries with it the usual presumption that the officer making it has certified to the truth, and has not been gulity of a wrongful or criminal action."

(2) The notary or other officer before whom an acknowledgment is taken performs a very important duty when he takes and certifies an acknowledgment of a deed or any instrument affecting the title to real estate. For that reason great weight is given to his official act in certifying to the validity of such instruments. The impeachment of his certificate involves a charge of criminal violation of duty on the part of the certifying officer. This brings us to a consideration of the evidence on the facts in the case. Notice may be first taken of the fact that it is contended that Gordon, the certifying officer, was a stockholder in the bank, and on this account, under the rule announced in *Davis* v. *Hale,* 114 Ark. 426, his certificate does not import the same verity as the certificate of an officer who was not a stockholder in the corporation affected. In response to this argument, we are of the opinion that a preponderance of the evidence does not show that Gordon

was a stockholder of the bank at the time he took the acknowledgment. It is true that at one place, the record recites that he was a stockholder at that time, and that he admitted such to be the fact when he first testified. After refreshing his memory, however, he testified that while he had been cashier of the bank for many years and had formerly owned stock in it, that at the date of the acknowledgment he was not a stockholder in the bank. He said that he disposed of his stock and only held forty shares of stock belonging to his brother as collateral security for a debt which his brother owed the bank, and for which he was surety for his brother to the bank. At the time he testified, Gordon was not in any way connected with the bank, but was the receiver of the United States Land Office located at Camden, Arkansas. His explanation of the matter was reasonable and consistent, and there is nothing in the record which in our minds contradicts his explanation. Therefore, we are of the opinion that he was not a stockholder in the bank at the time he took the acknowledgment, and that his certificate of acknowledgment is entitled to the same verity as would be attached to the certificate of any disinterested officer.

From the testimony set out in the statement of facts, we think it is fairly deducible that Gordon prepared the deed and delivered it to Gee on the second day of April; that Gee carried it home and after some words with his wife, procured her signature to it; that she became nervous after signing the deed, and was confined to her bed for several days, and that the acknowledgment to it was not taken for several days after she had signed it; and that she acknowledged it of her own free will.

(3)   It will be noted that it appears from the testimony of Gee and White, both members of the firm, and of Gordon, the cashier of the bank, that the deed was prepared by Gordon and delivered to Gee on the second day of April, 1913. White said that Gee took the deed home with him and brought it back to the store and kept it for several days before it was delivered to Gordon to take the acknowledgment; that Mrs. Gee was sick for several days

following the first day of April. The physician who attended her at that time also stated that she was in a very nervous condition. It is fairly inferable from all the circumstances that Mrs. Gee became very nervous when her husband first informed her that it was necessary to mortgage their home to secure the overdrafts at the bank. She admits that she knew the mortgage was given for that purpose. After signing the deed she became prostrated and was confined to her bed for a few days on account of her nervous condition. Her daughters think she was confined to her bed for perhaps a week and say that they were constantly with her during that time, and she did not sign the deed. They were doubtless mistaken as to the length of time their mother was sick. The physician who attended her stated that her husband paid him $3.00 on account of attending her on the 4th or 5th of April, 1913. It is not likely that this payment was made until her husband at least thought that she no longer needed the services of a physician and the amount indicates that not more than one or two visits were made by the physician. So it may be said that she was not confined to her bed after the 4th, or, at the furthest, the 5th, of April. This fact is corroborated by the testimony of both Gee and White. They both testified that Gordon said that he would take Mrs. Gee's acknowledgment over the telephone. White testified that the deed was kept in the store several days after it was first delivered to Gee before this conversation occurred. It is not at all probable that they would have acquiesced in Gordon's calling her up over the telephone to take her acknowledgment if she had been confined to her bed or was sick. While Gordon states that his recollection is that he took the acknowledgment on the evening of the 2d, or the morning of the 3d, of April, it is fairly deducible from the circumstances before stated that he was mistaken in this regard. It is very likely that he filled in the date of the deed when he prepared it, thinking that it would be acknowledged at the time it was signed. As above stated, the deed was kept at the store by Gee for several days after it was signed before it was given back

to Gordon for him to take the acknowledgment. Gordon then doubtless signed the acknowledgment leaving the date which had already been put in there when the deed had been prepared and delivered to Gee. It must be remembered that all the witnesses who testified to impeach the acknowledgment were directly interested in the result. When all the facts and circumstances in evidence are considered in the light of each other, we think the learned chancellor erred in holding that the certificate of acknowledgment was impeached and that Mrs. Gee did not acknowledge the deed.

It follows that the decree must be reversed and the cause will be remanded with directions to dismiss the complaint for want of equity and to decree a foreclosure of the mortgage in conformity with the prayer of the cross-complaint.