## Stephenson *v.* Lewis.

Opinion delivered March 6, 1922.

1. Depositions—transmission to clerk—presumption.—Under Crawford & Moses' Dig., § 4236, requiring depositions to be sealed up and delivered or mailed to the clerk, where depositions were taken by defendant's attorney unsealed and delivered to the clerk, they are *prima facie* inadmissible, and, in the absence of an affirmative showing that their integrity had been preserved, will not be admitted in evidence.

2.  WITNESSES—HUSBAND AND WIFE.—Testimony of defendant's wife as to a conversation between plaintiff and her husband was incompetent.

3.  LANDLORD AND TENANT—LIEN.—Where a lease stipulated that the landlord should receive a proportion of the crop grown and a money rent on lands not cultivated, the contract is an entire one, and the lien of the landlord exists on all of the crops to secure all the rent.

Appeal from Woodruff Chancery Court, Northern. District; *A. L. Hutchins,* Chancellor; reversed.

*R. M. Hutchins,* for appellant.

The depositions of appellee and his wife were both inadmissible because not transmitted by the notary to the clerk in the manner provided by statute. 115 Ark. 448; 99 Ark. 265; C. & M. Digest, § 4236. The statute is mandatory. The deposition of appellee's wife was inadmissible in any event, as she was incompetent, to testify for her husband in a suit between her husband and a third party. *Witham* v. *State,* 149 Ark. 324.

Appellee has not overcome the burden of showing the abrogation of the written contract, by a fair preponderance of the evidence. 13 C. J. 762; *Id.* 780.

The doctrine of estoppel relied upon by appellee does not apply in this case.

*Harry M. Woods,* for appellee.

The deposition of appellee was properly admitted, as after a hearing the chancellor found that the purpose of sec. 4236, C. & M. Digest, had not in this case been defeated. 115 Ark. 453.

Appellee concedes that the deposition of Mrs. Lewis was improperly admitted, but there is ample evidence without this to support the decree.

Appellant by his actions is estopped to demand of Lewis any greater amount of rent than he represented that Lewellen would be required to pay.

SMITH, J.   Appellant Stephenson was the plaintiff below, and brought this suit in equity to enforce his lien as a landlord against the proceeds of certain cotton re-

ceived and sold by appellee Lewis (defendant below) who is a merchant, and who furnished Lewellen, the tenant, the money and supplies to make the crop grown during the year 1920 upon the demised premises. The parties occupied the same relations to each other during the year 1919, except that the rental contract for that year provided for an agreed share of the crop. Stephenson testified that Lewellen failed to cultivate a portion of the land in 1919, and he therefore changed the 1920 contract on that account to provide for an agreed share of the cotton and corn and for $8 per acre rent on any land not cultivated by the tenant. Lewis carried over a large indebtedness due him by Lewellen during the year 1919, and there is a sharp conflict between his testimony and that of Stephenson as to the terms of the 1920 rental contract. Lewis testified that he refused to advance Lewellen until after Stephenson had modified the rental contract to make it the same as the 1919 contract had been, that is, that the rent should be only an agreed share.

The deposition of Lewis' wife was taken, and she testified that she heard the negotiation between Stephenson and her husband and corroborated her husband as to the modification of the 1920 contract. A motion was made to suppress this deposition upon the ground that Mrs. Lewis, as the wife of the defendant, was incompetent to testify; but this motion was overruled.

There was a motion to suppress the deposition of Lewis himself and that of his wife, upon the ground that the notary public who took the depositions gave them to defendant's attorney, who took them, unsealed, and delivered them in that condition to the clerk of the court. The order of the court made on the hearing of this motion recites the admission of the attorney for the defendant that the depositions had been transmitted by him and delivered unsealed to the clerk. The motion to suppress was overruled; but it does not appear what showing, if any, was made to warrant the order. In the

absence of an affirmative showing that the integrity of the depositions had been preserved, the depositions were *prima facie* inadmissible. Section 4236, C. & M. Digest, directs how depositions shall be directed and forwarded to the clerk of the court in which they are to be read. The action of the attorney in delivering these depositions to the clerk unsealed was in violation of this statute and rendered the depositions *prima facie* inadmissible; and there appears in the record no showing which removes this presumption. *St. L. I. M. & S. R. Co.* v. *Webster*, 99 Ark. 265; *Mo. & N. Ark. Rd. Co.* v. *Johnson*, 115 Ark. 448.

It is conceded that the deposition of Mrs. Lewis is incompetent, and that the court should have excluded it; but it is insisted that the competent testimony in the case sustains the finding made by the court below that the complaint was without equity. This is not true, for, with the deposition of Mrs. Lewis suppressed, as it must be, and in the absence of a showing validating the deposition of Lewis himself, the decree is without evidence to support it and must therefore be reversed.

In view of the reversal which must be ordered, we take occasion to announce the law applicable to the only question of law which appears to be involved in the decision of the case upon its merits, and that is, the extent of the landlord's lien.

Before the crop was gathered, the tenant abandoned it. Stephenson at the time claimed a balance on rent of $238.48. Stephenson gathered the remainder of the crop and applied the proceeds thereof, amounting to $62.51, to his demand, and sued for $175.97, the balance due after this credit was allowed. Lewis admits that he received cotton of much greater value than this balance claimed.

This balance is claimed as rent upon the land which the tenant did not cultivate pursuant to the written contract of tenancy to that effect. As has been said, Lewis claims this contract was modified so as to provide that

the rent should consist wholly in an agreed share of the crop, and that the provision for the payment of money rent on lands not cultivated was expressly abrogated. If the court should find the facts thus to be, then the finding and decree should be for the defendant, as it is admitted that Stephenson was given his share of the proceeds of the crop actually produced. *Few* v. *Mitchell,* 80 Ark. 243.

But what about the claim of a lien on the crop which was grown for the rent due on the lands which were not cultivated? Our answer to this question is that the lien of the landlord exists on all the crops to secure all the rent. The statute provides that every landlord shall have a lien upon the crops grown upon the demised premises in any year for rent that shall accrue for such year. Sec. 6889, C. & M. Digest. The contract was an entire one. The rent reserved was an agreed share of the crop grown on the lands cultivated and money rent for the remainder of the land. The lien as certainly exists to secure the payment of money as it does to secure the payment of an agreed share of the crop, and the statute gives a lien upon all the crop for all the rent.

In the case of *Von Berg* v. *Goodman,* 85 Ark. 605, a tenant agreed to make certain repairs on the demised premises as part of the rent. The tenant failed to make the repairs, and this court held that the landlord had a lien on the crop for the value of those repairs. It was there said: "But, as it (cost of repairs) was in fact stipulated for as a part of the rent, we hold that a lien existed for that as well as for the value of the part of the crop stipulated in the contract. * * * * The parties cannot put into the contract that which is not rent and by calling it rent create a lien on the crop for the amount (*Roth* v. *Williams,* 45 Ark. 447); but, if it is in fact a part of the rental price, its character as such is not changed because the liability therefor attaches upon the happening of some contingency, such as the failure to make repairs."

It is true the repairs in that case constituted a part of the rent for the whole of the demised premises; but the case is express authority for our holding that the claim for money rent is not defeated because liability therefor attached upon the happening of the contingency contracted against—the failure of the tenant to cultivate a portion of the land. The money to be paid in this contingency was made a part of the rent and furnished a part of the entire consideration for the whole of the land demised.

In 2 Wood on Landlord & Tenant, p. 1032, it is said: "But, if an entire rent is reserved, although it is in a subsequent part of the lease distributed to each tenement in several distinct sums, each tenement is charged with the whole rent."

The case of *Thompson* v. *Mead,* 67 Ill. 395, is a case directly in point. The law of Illinois giving liens to landlords appears to be identical with the law of this State, except that, instead of reading that "every landlord shall have a lien upon the crop grown upon the demised premises, * * * * " as the law of this State reads, the law of that State reads that "every landlord shall have a lien upon the crops growing or grown upon the demised premises." This difference is, of course, unimportant in its application to the point now under consideration. The tenant in the Illinois case agreed to pay as rent one-third of the crop raised, payable when the same should mature. The crop grown was a corn crop. A house on the same land was rented at the same time for $4 per month, payable in money. Rent was paid on the land, but not on the house, and a lien was claimed on the crop for this rent. The court said: "The proof was, the premises were an entirety—a part of one farm—and, though the rent of the house was payable in money, the law gave to the landlord a lien on the corn, or other crop, growing on the same premises." After the third of the corn called for by the rental contract had been given the landlord, a creditor of the ten-

ant attached the balance of the crop for debt, and the trial court told the jury that "although a landlord might distrain for any rent due for any premises upon crops grown upon any other premises, or any other property of the tenant, yet he has no lien upon crops grown upon certain premises except for rent due for said particular premises; and, unless the landlord has a lien upon a crop, he stands in no better condition than any attachment or execution creditor, and, as between him and such creditor, priority of levy gives precedence." This instruction was condemned in the following language: "This is so different from the first instruction given for plaintiff, that it seems irreconcilable with it, and must have misled the jury, and was not proper, in itself, on the facts of this case. Each and every part of the premises demised was subject to the lien for the rent of any one part, and the preference of the landlord does not depend on the levy of a distress warrant, or any proceeding. The law creates the lien, and from its very nature, and under the statute, must have precedence unless it has been waived, or the landlord been guilty of laches, neither of which was, or could be, set up in this case. There was but one contract, but one demise, and of one premises. The lien of the landlord covered each and every part of the crops growing upon it."

What was there said is applicable here. If the written contract was not modified, the rent payable in money was as much a part of the rent as any other part, and is secured by the lien given by law to the landlord to secure payment of the rent which accrued for the year for which the premises were demised.

The decree of the court below is therefore reversed, and the cause remanded for a new trial.