MILES v. JERRY.

Opinion delivered April 16, 1923.

1. ACKNOWLEDGMENTS—CONCLUSIVENESS.—Where a grantor appears and makes an acknowledgment before an officer authorized to take acknowledgments, the recitals of the officer's certificate, regular on its face, are, in the absence of fraud or duress, conclusive of the facts therein stated.

2. ACKNOWLEDGMENTS—FORGERY—BURDEN OF PROOF.—Where a married woman did not appear before the officer who certified her acknowledgment to a conveyance of an oil and gas lease of her husband's homestead, although he may have certified that she did, she may show by a preponderance of the evidence that she never acknowledged the deed.

3. HOMESTEAD—JOINDER OF WIFE IN HUSBAND'S CONVEYANCE.—An oil and gas lease affecting a husband's homestead is void unless the wife both joins in signing and acknowledges the deed.

4. ACKNOWLEDGMENT—SUFFICIENY OF EVIDENCE IMPEACHING.—Chancellor's finding that an oil and gase lease affecting a husband's

homestead was not acknowledged by the wife *held* contrary to the preponderance of the evidence.

Appeal from Union Chancery Court; *J. Y. Stevens,* Chancellor; reversed.

### STATEMENT OF FACTS.

A. A. Jerry and Lissie Jerry, husband and wife, brought this suit in equity against George S. Miles, trustee, to cancel an oil and gas lease executed by them on certain land in Union County, Ark., on the 15th day of July, 1919, and duly filed for record on the 16th day of July, 1919.

The ground relied upon for a cancellation of the lease is that it was the homestead of plaintiffs, and that the purported acknowledgment of the wife to the lease as certified to by the notary public was a forgery. The suit was defended on the ground that the acknowledgment was genuine, and not a forgery.

According to the testimony of A. A. Jerry, the land in controversy constituted his homestead, and he resided upon it with his wife at the time the lease in question was executed. W. C. Grace procured him to execute the lease by representing that he would put down a test well for gas and oil. Grace told him that the well would be put down during the next month, or else the lease would be canceled. Grace did not put down a well as he promised to do, and about six months thereafter Jerry asked Grace for a return of the lease, which he refused to do. After a year had elapsed, no development for oil and gas having been made on the land, he instituted this action. His wife, Lissie Jerry, signed the lease because he persuaded her to do so. She did not acknowledge it before W. G. Grace or any one else. The lease was not read over to him, and he would not allow his wife to read it.

According to the testimony of Lissie Jerry, she was not present when her husband signed and acknowledged the lease. She signed it because her husband persuaded her to do so, and because she was afraid of trouble in

the family. She did not acknowledge the lease before W. G. Grace or any one else.

Elmo Ahrens was a witness for the defendant. According to his testimony, he was with W. G. Grace when the lease in controversy was executed. They first met A. A. Jerry and his wife in the field. They all went from the field to the house, and the lease was signed at the house. Lissie Jerry sat inside of the room, looking out of the front window, at the time she acknowledged the lease. She had already signed the lease down in the field. The witness was sitting just outside the window, and knew that Lissie Jerry acknowledged the lease.

According to the testimony of W. G. Grace, he was the notary public who took the acknowledgment of Lissie Jerry to the lease in controversy. Jerry and his wife agreed to execute the lease down in their field. They all then went up to the house, and Grace filled out the lease. Jerry first executed it, and then Grace went into the house, where Lissie Jerry signed and acknowledged the lease. Within a year after the lease was executed a well was started and drilled 2,780 feet deep within a mile and a half of the land in controversy. Grace did not agree with plaintiffs that a well would be drilled on their land, but told them that, if he obtained sufficient acreage, a well would be drilled in the neighborhood. Other evidence will be stated or referred to in the opinion.

The chancellor found in favor of the plaintiffs, and it was decreed that the lease should be canceled as a cloud upon their title.

The defendant has duly prosecuted an appeal to this court.

*Powell & Smead* and *Jordan Sellers,* for appellant.

Every question raised here except that relative to lack of acknowledgment is settled by the decision in 145 Ark. 310. Proof not sufficient to show lease not acknowledged by wife. 69 Ill. 699; 65 Ill. 505; 103 U. S. 548; 97 U. S. 624; 109 U. S. 573; 55 Md. 231; 147 Mo. 633; 11 Ohio St. 212; 149 N. Y. 71; 38 Ark. 278. Court departed from the beaten trail in 117 Ark. 321. Cases

where there was some form of acknowledgment. 38 Ark. 377; 41 Ark. 421; 45 Ark. 117; 96 Ark. 564; 104 Ark. 226. Court appears to have realized unsoundness of decision in 117 Ark. 321, for, after following it in 130 Ark. 212 and *Ib.* 448, in 147 Ark. 184 it goes back to the rule requiring "clear, cogent and convincing" evidence. Burden of proof on one denying execution of instrument, and great weight is given to officers' certificate of acknowledgment. 130 Ark. 312; 117 Ark. 321; 9 Col. 597; 65 Ill. 505; 86 Ill. 1; 142 Ill. 160; 43 Mich. 208; 11 Wyo. 200; 42 N. Y. Supp. 834; 52 S. W. (Tenn.) 900; 122 Iowa 297; 182 Ill. 341; 55 Md. 231; 149 N. Y. 71.

*Jesse B. Moore,* for appellee.

Decree not against preponderance of the testimony. Counsel for appellants unable to grasp the well-defined and recognized difference in kind and weight of evidence required to sustain allegations of fraud and forgery of acknowledgment where none has been made, as here, and those cases where some sort of acknowledgment has been made. 117 Ark. 321; 37 Ark. 145; 38 Ark. 377; 41 Ark. 421; 45 Ark. 117; 96 Ark. 564; 104 Ark. 226; 130 Ark. 312; 147 Ark. 181; 130 Ark. 448.

HART, J., (after stating the facts). According to the allegations of the complaint, Lissie Jerry, the wife of A. A. Jerry, never acknowledged the lease before W. G. Grace, a notary public, or any other officer. Oral evidence was introduced to overcome the certificate of acknowledgment, and counsel for the defendant contend that, in order to overcome the certificate of acknowledgment, the evidence must be clear and convincing beyond reasonable controversy. They have cited authorities in support of their contention; but we do not deem it necessary to discuss or to review them, for the question has already been settled by this court.

In the case of *Polk* v. *Brown,* 117 Ark. 321, the court held that the burden of proof rests upon the person denying that he signed a deed or acknowledged it to show the falsity of the certificate of acknowledgment; but

that the weight of the evidence should not be affected by any particular rule peculiar to the subject. The holding in this case has been followed in *Nevada County Bank v. Gee*, 130 Ark. 312, and *Straughan v. Bennett*, 153 Ark. 254.

Counsel for the plaintiffs admit this to be true, but contend that these cases are contrary to the ruling in our earlier cases on the subject, and insist that they be overruled. We cannot agree with counsel in their contention. This court has uniformly held that where a grantor appears and makes some kind of acknowledgment before an officer authorized by law to take such acknowledgment, the recitals of the certificate of such officer, regular on its face, are, in the absence of fraud or duress, conclusive of the facts therein stated. *Bell v. Castleberry*, 96 Ark. 564.

A different question presents itself in the case of a certificate of acknowledgment alleged to have been forged. A proper acknowledgment is an essential part of the execution of a conveyance of land, and it is competent for the grantor to show the falsity of a certificate of acknowledgment. Where the grantor never appears before an officer to acknowledge the deed and the officer makes a false certificate that the grantor did appear, his act is wholly without authority of law, and void. Every one must be subject to the risk of forgery by officers authorized to take acknowledgments. No one can claim that an estate in land should be divested by forgery, and the forgery need only be established by a preponderance of the evidence. This rule was recognized in *Watson v. Billings*, 38 Ark. 278, and *Meyer v. Gossett*, 38 Ark. 377.

In the first mentioned of these cases the court held that an officer's certificate of the grantor's acknowledgment of the execution of a deed is not evidence of the execution unless the deed and certificate have been filed for record. In that case a suit for dower was defended on the ground that dower had been duly relinquished during the husband's lifetime, and that therefore the widow was not entitled to dower. The widow testified

positively that she did not sign the release of dower and acknowledge it. The justice was equally positive that she did. The deed had not been filed for record. Hence the court held that the burden was on the defendant to show that the widow had relinquished dower. The court seems to have decided the case on the preponderance of the evidence, and nothing was said about requiring it to be clear and convincing.

In the last mentioned case the facts were different. The deed had been filed for record, and the wife admitted that she had signed the deed and had gone with her husband to the house of the justice of the peace for the purpose of acknowledging it. She stated, however, that the justice asked her no questions and did not examine her apart from her husband. The chancellor found, as recited in the decree, that her acknowledgment was taken by the justice without making the privy examination in the absence of her husband, as required by law. The chancellor did not find that the wife did not acknowledge the deed at all. Hence it was a case of a defective acknowledgment. The wife actually appeared before the justice of the peace for the purpose of acknowledging the deed. Her husband was with her, and handed the deed to the justice, saying that he and his wife had come to acknowledge it. Under these circumstances the court properly held that there was an acknowledgment by the wife, defective though it may have been. Hence the case called for the application of the rule that the testimony to overcome the certificate of acknowledgment must have been clear and convincing.

It is easy to procure an appointment as notary. The notary's certificate entitles the instrument to registration, and land titles would be insecure if the owner was required to prove by clear and convincing evidence that the instrument was a forgery. The deed having been registered, the burden of proof was upon the party seeking to impeach the certificate of acknowledgment. Where the wife does not appear before the officer at all to acknowledge the deed, although he may certify that she

did, she may show that she did not appear and acknowledge the deed, and thus show that the instrument is not genuine.

This brings us to a consideration of the question of whether or not the forgery of the acknowledgment has been established by a preponderance of the evidence.

We think that the learned chancellor erred in holding that the plaintiffs made out their case. It is true that both the husband and the wife testified in positive terms that she did not acknowledge the lease. They both admitted, however, that she signed it, and seek to avoid it on the ground that she did not acknowledge it. In this connection it may be stated that, under our statute, no conveyance or other instrument affecting the homestead shall be of any validity, except in certain enumerated cases, unless the wife joins in the execution of the instrument and acknowledges it. Sec. 5542 of Crawford & Moses' Digest.

It does not appear from the record whether or not the plaintiffs knew that the lease on their homestead could not be effective unless the wife acknowledged it; but it does appear that they knew that the notary carried the lease away with him after they say the wife refused to acknowledge it. It was duly filed for record the next day, and no explanation is offered by the plaintiffs why they waited for a year for the defendant to begin work on the lease if they knew that the lease was void because the wife had not acknowledged it. Hence it will be seen that their testimony is not in all respects consistent.

As we have already seen, the burden of proof was upon them to show the falsity of the certificate, which carried with it the presumption that the officer making it had certified to the truth and was not guilty of forgery. In addition to the *prima facie* case made by the certificate of acknowledgment, we have the positive testimony of the notary and of another person accompanying him that the wife did acknowledge the lease.

An attempt is made to contradict their testimony by showing that there was no window opening on the

gallery, and that therefore the testimony of one of the witnesses was false when he stated that he was on the gallery and heard the wife acknowledge the execution of the lease in the house through the window. The apparent contradiction is immaterial, for it may have been that he heard her through the open door. The material point is that both of them testified in positive terms that the wife did acknowledge the lease. She admits that she signed it at the request of her husband, and permitted them to carry the lease away without protest. The delay in bringing suit is inconsistent with the testimony of the plaintiffs to the effect that the wife absolutely refused to acknowledge the lease after signing it.

When all the attending circumstances are considered, we think that the chancellor erred in holding that the testimony of the plaintiffs was sufficient to show that the lease had not been acknowledged by the wife, and that the certificate of acknowledgment was therefore a forgery.

It follows that the decree will be reversed and the cause remanded, with directions to dismiss the complaint for want of equity.