## ANTHONY *v.* PENNINGTON.

Opinion delivered January 12, 1931.

*James E. Hogue,* for appellant.

*Chas. W. Mehaffy,* for appellee.

SMITH, J. Appellant, Primos Anthony, who was the plaintiff below, alleged and offered testimony to the following effect: In September, 1904, he contracted to purchase from Garibaldi lots 11 and 12, in block 8, of Hanger's Addition to the city of Little Rock, for the sum of $850. On February 23, 1905, Garibaldi conveyed these and other lots to appellee, W. J. Pennington, the deed

reciting that the sale and conveyance of the two lots above described were subject to the contract between Garibaldi and plaintiff. Upon executing this deed, Garibaldi indorsed all the purchase money notes which Anthony had given him and delivered them to appellee Pennington, after which Anthony made payment of these purchase money notes to Pennington. Anthony has paid to Pennington all the purchase money, and much more. Wherefore he prayed an accounting, and that he have judgment for the excess paid, and that all title of Pennington be divested out of him and vested in Anthony, and that Anthony's title be quieted and confirmed.

The contract between Anthony and Garibaldi was admitted, as was also Pennington's purchase of the lots from Garibaldi subject to this contract, but Pennington alleged and offered testimony to the effect that Anthony was unable to complete his payments and conveyed to Pennington his interest in the lots in a deed dated February 12, 1907, and that later a written contract was entered into between them whereby Pennington agreed to convey lot 11 to Anthony for the consideration of $960, and Pennington alleged that this payment had never been completed.

It appears from this brief statement of the case that the issues involved are questions of fact, and the testimony is both voluminous and conflicting. We will not recite this testimony, which has been carefully considered, and will only announce our conclusions concerning it.

Anthony testified that he paid forty-eight notes each for $20, but he produced only eleven of them. The others, he said, were paid by deposits in the bank, the name of which he could not remember, to Pennington's credit, but there was no proof of these payments except Anthony's own testimony. Anthony further testified that he made many payments extending up to 1919 which aggregated $2,424, and that in addition he had made payments in cotton and labor amounting to $931. Anthony kept no book of accounts.

On the other hand, Pennington testified that he assisted Anthony in his attempt to purchase the lots, and, after obtaining the deed from Garibaldi, he continued to indulge Anthony until the latter concluded that he could not complete his payments, whereupon Anthony and his wife, on February 12, 1907, executed to Pennington a quitclaim deed for both lots. A house was built on lot 11, which Anthony occupied for some years as a tenant, paying rent, and on February 1, 1914, Pennington contracted to convey to Anthony lot 11 for a consideration of $960. Anthony denied the execution of either the deed or the contract to convey and claims his title under his original contract with Garibaldi.

The testimony of Anthony in regard to his payments proves too much, for, according to his testimony, he paid three times the purchase price of the lots before demanding his deed.

We think the testimony on behalf of Pennington is much more consistent. According to this testimony, Pennington furnished Anthony as a share cropper making a cotton crop for a number of years, and many of the payments which Anthony claims should be credited on the lots were credited, by consent, to the farming account, and a balance on that account of $9.64 remains due and unpaid, and a balance of $328.34 remains unpaid on the purchase money due on lot 11.

The deed from Anthony and his wife to Pennington was signed by them by mark, and opposite their names was written: "Witness to Marks: T. W. Wilson. Mary Anthony." Wilson was the notary public who took the acknowledgments and had died before the depositions were taken in this case. Mary Anthony, the other attesting witness, was the daughter of the grantor, and she testified that she had not witnessed the signature of either her father or mother, and they both denied that they had signed or acknowledged the deed. The deed had been duly recorded, and a certified copy of it, as recorded, was offered in evidence. Pennington testified

that he was present when Anthony and his wife signed and acknowledged the deed.

The law of this feature of the case was recently considered in *Miles* v. *Jerry*, 158 Ark. 314, 250 S. W. 34, where it was held that, when a grantor makes an acknowledgment before an officer authorized to take acknowledgments, the recitals of the officer's certificate, regular on its face, are, in the absence of fraud or duress, conclusive of the facts therein recited. But, although the officer may have certified that the grantors appeared and acknowledged the instrument, they may show that they did not in fact appear and acknowledge, but this burden rests upon the grantors who question the certificate of acknowledgment, and may be discharged by a preponderance of the evidence. *Clifford* v. *Federal Bank & Trust Co.*, 179 Ark. 948, 19 S. W. (2d) 1026.

We are of the opinion that Anthony has not discharged this burden, and the conduct of the parties subsequent to the date of this deed confirms us in that view.

We are also of the opinion that the contract hereinabove referred to dated February 1, 1914, for the reconveyance of lot 11 to Anthony was, in fact, executed by him as well as by Pennington. It is insisted that this contract was without consideration, for the reason that Anthony had already bought and paid for this lot, but we do not concur in that view, nor did the chancellor. It was shown by Pennington's books of account that Anthony was indebted to Pennington in the sum of about $500 at the time of the execution of this contract, and that Pennington had spent a considerable sum of money building the house on lot 11 in which Anthony then lived and on which he had been paying rent at the rate of $1.50 per week. Upon the execution of this contract to convey, it was agreed that the money which had been paid as rent should be treated and credited as payment of interest on the purchase money.

Much of Pennington's case was made by the testimony of his wife, and objection was made to the introduc-

tion of this testimony because she was the wife of the defendant, Pennington. It appears, however, that Mrs. Pennington was acting as the agent of her husband in all the matters about which she testified. She kept her husband's books, and had kept the account with Anthony, and the chancellor appears to have accepted her testimony as a substantially correct statement of the account. According to this account, Anthony owed a balance of purchase money, exclusive of interest, of $328.34, and the chancellor found the balance to be $288.40.

Numerous cases declare the law to be that, where either spouse acts as agent for the other, testimony by the one acting as agent relative to matters within the scope of the agency is competent. *Franks* v. *Rogers,* 156 Ark. 120, 245 S. W. 311; *Stephenson* v. *Lewis,* 152 Ark. 361, 238 S. W. 61.

The chancellor found that Anthony owed a balance of $288.40 on his contract to purchase lot 11, with interest from February 1, 1919, when the last payment was made. Pennington's title to lot 12 was quieted. A lien was declared on lot 11 in Pennington's favor for the balance due on that lot, and time was given for its discharge, Anthony's title to that lot being declared and quieted if the payments were made. We are unable to say that this finding is contrary to the preponderance of the evidence, and it is therefore affirmed.

MEHAFFY, J., not participating.