O'KANE v. FIRST NATIONAL BANK OF PARIS.

4-3487

Opinion delivered June 11, 1934.

*James B. McDonough,* for appellant.

*Arnett & Shaw,* for appellee.

McHANEY, J. This is an action by appellees against appellant and her husband, W. S. O'Kane, for the foreclosure of two mortgages given to secure certain indebtedness represented by three promissory notes. One of the mortgages was dated April 6, 1927, and was executed by W. S. O'Kane alone to secure an indebtedness to L. B. Crenshaw. It was sold and assigned to appellee bank after maturity in 1933. The other was dated July 30, 1930, and purported to be signed and acknowledged by both appellant and her husband, the acknowledgment being dated October 7, 1930, and was recorded the same day. This mortgage by express terms made it subject to the Crenshaw mortgage.

The defense to the foreclosure action by appellant was that, although she signed the mortgage of July 30, 1930, she did so under duress and compulsion of her husband, and that she did not acknowledge the same. The court found both issues against her and decreed foreclosure, extinguishing her dower and homestead rights in and to the lands described.

This appeal presents the same questions for review, and these are principally questions of fact. To support

her plea of duress, appellant testified as follows: "Well, Mr. O'Kane had been trying to get me to sign the mortgage, and I refused to sign it, and he said I had to sign it. He cursed and made me sign it." She was corroborated somewhat by her husband, but the trial court held his testimony incompetent, and this forms the basis of one argument for reversal by appellant. We do not think it necessary to determine this question in this case, for, conceding without deciding its competency, we are of the opinion that the decree of the court in this respect, as well as upon the issue of whether she appeared before the notary and acknowledged the instrument, is not against the preponderance of the evidence. Appellant admitted she signed the mortgage at her home and that her husband took it to the bank. She did not at any time mention the matter of duress to any official of the bank. Mr. O'Kane took the mortgage to the bank and there acknowledged it before Dolph Guthrie, notary. His wife (appellant) was not present at that time. Officials of the bank testified that she later came in and acknowledged some paper before the same notary, and this paper was handed to the cashier. The acknowledgment was completed October 7, 1930, and was recorded that same day. The certificate of the officer is regular in form, and states that she, "in the absence of her said husband, declared that she had of her own free will executed the foregoing deed and signed and sealed the relinquishment of dower and homestead therein expressed for the consideration and purpose therein contained and set forth, without compulsion or undue influence of her said husband." This mortgage had been delivered to the notary to hold for the acknowledgment of appellant, and, when it was had, it was turned back to the cashier, Mr. Sadler, who had it recorded the same day. Appellant stands alone in denying that she appeared and acknowledged the instrument. She is contradicted, not only by her interest in the result of this lawsuit, but by the certificate of the officer and two officers and employees of the bank, and by her admission that she actually signed her name to it. The burden was upon her to establish the falsity of the

certificate of the notary, and this she has failed to meet. As said by the late Chief Justice HART, in *Nevada County Bank* v. *Gee*, 130 Ark. 312, 197 S. W. 680: "In our opinion, the weight of the evidence should not be affected by any particular rule peculiar to the subject, but rather the court should be left to determine from all the circumstances disclosed whether the certificate of acknowledgment is true or false. This much may be said, however, under chapter 29 of Kirby's Digest, a proper acknowledgment is an essential part of the execution of a conveyance. The acknowledgment is an official act done under an official oath and is protected under the presumption the law necessarily indulges in favor of the acts of its own officers. Under our statute, one of the means of evidence upon which a deed can be admitted to record is a certificate of proof or acknowledgment of an officer authorized by our statute to take such proof or acknowledgment. The burden of proof undoubtedly rests upon the person denying the falsity of the certificate, which carries with it the usual presumption that the officer making it has certified to the truth, and has not been guilty of a wrongful or criminal action.

"The notary or other officer before whom an acknowledgment is taken performs a very important duty when he takes and certifies an acknowledgment of a deed or any instrument affecting the title to real estate. For that reason great weight is given to his official act in certifying to the validity of such instruments. The impeachment of his certificate involves a charge of criminal violation of duty on the part of the certifying officer." See also *Miles* v. *Jerry*, 158 Ark. 320, 250 S. W. 34; *Clifford* v. *Federal Bank and Trust Co.*, 179 Ark. 948, 19 S. W. (2d) 1026; *Anthony* v. *Pennington*, 182 Ark. 1039, 34 S. W. (2d) 219; *Jolly* v. *Meek*, 185 Ark. 395, 47 S. W. (2d) 43, and cases cited therein.

The evidence is amply sufficient to support the court's finding that she did appear before the officer and did acknowledge the instrument. Having done so, and having solemnly and without compulsion stated to the officer that she had signed same "without compulsion or

undue influence of her said husband," she ought to be and is now estopped from so contending.

The decree of the chancery court is correct, and must be affirmed.