FREEMAN *v.* FEDERAL LAND BANK OF ST. LOUIS.

4-3723

Opinion delivered March 11, 1935.

*A. Sneed,* for appellants.

*O. T. Ward, J. R. Crocker* and *A. T. Welborn,* for appellee.

SMITH, J. Appellee, the Federal Land Bank of St. Louis, filed suit on February 3, 1933, to foreclose a mortgage given it by R. L. Wooten and Mollie, his wife, conveying west half, southwest quarter of section 18, township 19 north, range 8 east, containing 80 acres, more or less. The mortgage was executed April 2, 1928, and was given to secure a note for $3,200, payable to the order of appellee. Default in payment was alleged, and is conceded.

Mrs. J. V. Freeman was made a party defendant, upon the allegation that she "probably claimed some interest in a parcel of lands conveyed in plaintiff's mortgage, the exact nature of which claim is unknown to plaintiff; and it requests that she be made a party to this suit and be required to answer and set up what claim, if any, she may have." Mrs. Freeman filed an answer, in which she denied Wooten's ownership of four acres of the land described in the mortgage, more particularly described as "commencing at the northwest corner of

the northwest quarter of the southwest quarter of section 18, township 19 north, range 8 east, in Clay County, Arkansas, thence running east 80 rods, thence south 8 rods, thence west 80 rods, thence north 8 rods, to the place of beginning.'' It is apparent from this description that the four acres thus described is a parallelogram and lies in the northern part of the northwest quarter of the southwest quarter of the section, and the testimony shows that it was separated from the remainder of the west half of the southwest quarter by both a road and a ditch.

An abstract of the title to the entire west half of the southwest quarter was furnished appellee, which disclosed title to the four acres in Mrs. Freeman, under a deed to her, duly recorded, of date February 23, 1925, from one C. A. Long, who had acquired title by a deed to him, duly recorded, from J. W. Bolton and Ella C., his wife, of date January 9, 1909. Upon an inspection of the abstract, appellee's title examiner made certain requirements before approving the title, and it was testified on behalf of appellee that the loan would not have been made if these requirements had not been met. Among other requirements were these: ''4. Furnish supplemental abstract from and including 4-9-21 at 5:00 o'clock P. M., which should show, among other things, * * * (c) deed from C. A. Long and wife to that part of the northwest quarter, southwest quarter conveyed to Long; (d) deed from Ella C. Bolton, or from her grantees, to applicant, free of all liens.''

These requirements were met by showing, in a continuation of the abstract, a deed from Mrs. Freeman and her husband to R. L. Wooten, dated May 2, 1928, and filed for record May 12, 1928, which purported to convey to Wooten the four acres above described. This was a quitclaim deed, and recited a consideration of a dollar. The abstractor's certificate showing this conveyance satisfied the examiner's requirements, and the application was approved and the loan was made.

Mrs. Freeman, in her answer, denied the execution of this deed, and the question of fact, whether she did execute it, is the sole question in the case.

A foreclosure of the mortgage against the entire eighty acres was decreed, and, as this order imports a finding that Mrs. Freeman did execute the deed to Wooten, we set out the testimony somewhat extensively, as we do not concur in that finding.

It appears that a bank in Rector sold a farm to Wooten, who gave a mortgage thereon to appellee and a second mortgage to the bank. It was desired to increase the loan secured by a mortgage on this farm for the purpose of paying the debt due the bank, and the bank received the net proceeds of the loan after it had been made.

The deposition of the notary public, whose name appears in the acknowledgment, was taken, and we copy from appellee's brief the substance of the notary's testimony, as there abstracted, as follows: "J. L. Purcell, who took the acknowledgment of P. T. Freeman and J. V. Freeman, his wife, to the deed in controversy, testified it was his recollection that Mr. and Mrs. Freeman came into the bank with the deed, and that it had been so long that he was not positive about it. He states that, to the best of his knowledge, the certificate of acknowledgment to the deed bears the exact truth."

Mrs. Freeman had never done any business with the bank, and her husband appears to have had only a single transaction with it. This consisted in giving a note for $11 to secure a loan which had been paid, but the note had not been surrendered to Mr. Freeman. This note was offered in evidence for the purpose of comparing Mr. Freeman's admitted signature thereon with that appearing on the deed in question. Another deed from Freeman and his wife, having no relation to the land here involved, was offered in evidence for the same purpose.

A witness named Greathouse testified in regard to these signatures, two of which were admitted to be genuine. This witness testified: "I was there (in the bank) a few years, from the time it happened to September, 1922. Then I went to St. Francis and stayed until '28. In August '28 I came back. I was with them (the bank) until it closed, and have been with the receiver until two or three months ago." It was upon this experience that the witness qualified as an expert to compare and testify

in regard to the signatures. He admitted that "I have not seen his (Freeman's) signature on many papers." When asked if all the signatures were by the same persons, he answered: "I think so. If they did not sign them, it would take a smarter man than I am to tell it."

The circumstances in regard to filing the deed for record are as follows: The records of the recorder's office showed that: "The mortgage from R. L. Wooten to the Federal Land Bank, a deed from the First National Bank of Rector to R. L. Wooten, and the quitclaim deed from J. V. Freeman and P. T. Freeman to R. L. Wooten, were delivered to the circuit clerk for record by the Clay County Abstract Company." This was the abstract company which prepared the original abstract and brought it down to date. The manager of the abstract company was asked to "tell the court where the Clay County Abstract Company got these instruments." The witness answered: "Well, they were either delivered to us by one of the officers of the First National Bank or filed for record by one of the officers of the bank, to be delivered to us by the recorder. You might say that they were delivered to us by one of the officers of the bank and then filed for record by us." The witness stated that none of the deeds above mentioned were delivered by either Wooten or Freeman. He further testified that the abstract company frequently received deeds and mortgages from various banks belonging to other persons for record. He admitted that his testimony as to the instruments mentioned was based upon custom, and not upon his recollection as to those particular instruments.

A witness named Campbell testified that he went with the appraisers to appraise the land, and that he filed the application for the loan, which was signed by Wooten, with the Federal Land Bank, his exact answer being: "I filed it (the application) with the Federal Land Bank. I guess he (Wooten) signed it. They (the Bank of Rector) could not make the application themselves." He admitted that he had never mentioned the matter to Wooten, but that he had talked with "some of the boys at the First National Bank, Lonnie Purcell (the notary who signed the acknowledgment) perhaps."

Mrs. Freeman testified that she and her husband owned a forty-acre tract of land adjoining the four acres in question, which they bought to put their improvements on, and that the house and barn and other improvements were on the four-acre tract, and none were on the forty-acre tract; that she had never had a business transaction of any kind with Mr. Wooten; that she had not sold him the four acres, and that she had not signed or acknowledged the deed thereto; that her husband had paid the taxes for her and in her name on the land each year continuously since she bought it; that through her tenants she had at all times been in the exclusive and undisturbed possession since her purchase, and that she had never heard of the deed until after the summons had been served on her making her a party to this suit. The testimony of her husband was to the same effect.

Wooten testified that he had never heard of the deed until this suit was brought; that he bought from the bank a tract of land described as containing 80 acres, more or less, but that he knew this deed did not convey the four acres in controversy which was separated from the remainder of the tract by both a road and a ditch. He had never claimed this four-acre tract, and had never been in possession of it. On the contrary, the four acres had at all times been in the actual possession of Mrs. Freeman since her purchase of it, and was now in her possession. He had never attempted to buy the land from her, and had never paid her anything for it, and had never received a deed from her for it.

The testimony appears to be undisputed that, although the deed to Wooten was dated May 2, 1928, and was recorded on the 12th day of that month, Mrs. Freeman continued to remain in the exclusive and undisturbed possession, exercising all acts of ownership, including the payment of taxes. This possession of the land continued for about five years after the date of the deed before the institution of this suit, and still continues.

We are constrained to hold that Mrs. Freeman did not execute the deed, and it is therefore unimportant to even speculate as to who did sign her name and that of her husband.

The law of the subject was declared in the case of *Miles* v. *Jerry*, 158 Ark. 314, 250 S. W. 34, where it was said: "A different question presents itself in the case of a certificate of acknowledgment alleged to have been forged. A proper acknowledgment is an essential part of the execution of a conveyance of land, and it is competent for the grantor to show the falsity of a certificate of acknowledgment. Where the grantor never appears before an officer to acknowledge the deed and the officer makes a false certificate that the grantor did appear, his act is wholly without authority of law and void. Every one must be subject to the risk of forgery by officers authorized to take acknowledgments. No one can claim that an estate in land should be divested by forgery, and the forgery need only be established by a preponderance of the evidence. This rule was recognized in *Watson* v. *Billings,* 38 Ark. 278, and *Meyer* v. *Gossett,* 38 Ark. 377." This holding was reaffirmed in the later case of *Hall* v. *Mitchell,* 175 Ark. 643, 1 S. W. (2d) 59, where the case of *Wilson* v. *Biles,* 171 Ark. 912, 287 S. W. 373, to the same effect, was cited.

The still later case of *Clifford* v. *Federal Bank & Trust Co.,* 179 Ark. 948, 19 S. W. (2d) 1026, cites other cases and distinguishes the rule applicable to cases where the grantor appeared and in some manner made an acknowledgment before an officer having authority to take acknowledgments. In the instant case the acknowledgment is valid, if not a forgery, and the cases first cited announce the applicable rule.

For the reasons stated, the decree of the court below will be reversed, and the cause will be remanded, with directions to dismiss the foreclosure proceeding in so far as it relates to the four-acre tract.