POLK *v.* BROWN.

Opinion delivered March 8, 1915.

1. ACKNOWLEDGMENTS—FALSE CERTIFICATE OF OFFICER—BURDEN OF PROOF—DEED.—The burden of proof rests upon the person denying that he signed a deed or acknowledged it, to show the falsity of the certificate, which certificate carries with it the presumption that the officer making it has certified to the truth, and has not been guilty of a wrongful or criminal action.

2. ACKNOWLEDGMENT—DEED—FALSE CERTIFICATE OF OFFICER—SUFFICIENCY OF THE EVIDENCE.—Plaintiff, sought to have her dower set aside in lands formerly belonging to her deceased husband. The record showed a deed to defendant's grantors from plaintiff's husband, with her own relinquishment of dower and homestead duly acknowledged. *Held,* that for plaintiff to show that the certificate of acknowledgment was false, the burden was upon her to show that fact by evidence, clear, cogent and convincing, and that under the proof in the case she had failed to discharge that burden.

Appeal from Clay Chancery Court; *Charles D. Frierson,* Chancellor; reversed.

STATEMENT BY THE COURT.

This action was instituted in the chancery court by Malissa Brown against W. D. Polk for allotment of dower in a certain tract of land which she alleged was owned by

her husband in his lifetime, and sold by him during coverture without relinquishment of her dower rights. The facts are as follows:

There is in the record a deed from Henry Brown and Malissa C. Brown, his wife, to John T. Miller and H. C. Redwine. The deed is a warranty deed in common form and was executed on the 30th day of December, 1898. There is a certificate of acknowledgment showing that Henry Brown appeared before a notary public on the 30th day of November, 1898, and acknowledged the deed in accordance with the statute. There is also a certificate of acknowledgment dated December 1, 1898, which shows that Malissa Brown appeared before a justice of the peace and acknowledged her relinquishment of dower to the lands described in the deed. The certificate was signed by J. C. Wells, a justice of the peace, and is in the form prescribed by the statute. This deed was filed for record on the 5th day of December, 1898, and duly recorded.

On the 2d day of August, 1906, J. T. Miller and H. C. Redwine conveyed the lands in question to W. D. Polk. This deed was duly acknowledged and filed for record.

Redwine and Miller went into possession of the land immediately after the execution of the deed to them, and remained in possession of it until they conveyed it to the defendant Polk. Polk then took possession of it and has continued in possession ever since. It is admitted that he had no knowledge or information at the time he purchased the land that it was claimed by the plaintiff that she had not signed the deed or released her dower to Miller and Redwine. Polk testified that he had not heard that the plaintiff claimed that she had not signed the deed until after the institution of this suit, which was on the 18th day of March, 1913.

Malissa Brown testified: I am fifty-six years old; during the fall of 1898 my husband came home from town one evening and told me I had to sign away my dower in the land to J. T. Miller and H. C. Redwine because Miller and Redwine claimed some money against him as guar-

dian or administrator of an estate; I reminded him that we had agreed never to sign our place away to any one, and told him that I would not sign it; he told me the parties would be there the next day to get me to sign the deed and the next day Miller and Redwine, in company with J. C. Wells, came to our house about 10 o'clock and stayed till after dinner; after dinner the men in company with my husband went into the front room and I remained in the kitchen with my son to wash the dishes; J. C. Wells came back into the kitchen where I was and, producing the deed, asked me to sign it; I told him that I would not sign it and that we intended to keep the land for our boy; he asked me why I wouldn't sign it and I just told him I wouldn't sign it at all. He then sat down at the table and wrote on the deed a few minutes and said to me, "Touch the pen now, Mrs. Brown," and I said, "No, I will never do that either;" the door between the front room and kitchen was closed during all this time; Wells then got up, folded the deed, and stuck it in his pocket and went into the front room and handed it to John Miller; Miller, Redwine and Wells then left the house; after they left my husband came into the kitchen and said to me, "I thought you said you would never sign that deed," and I replied that I never signed it and never would; that was all he ever said about it, and I never said any more about it; Wells told me when I refused to sign the deed that the land would be mine if I outlived my husband.

On cross-examination Mrs. Brown stated that the door between the kitchen and front room was closed, and that she did not know that Wells handed the deed to Miller, but that her husband told her that he did; that Wells at the time lived about four miles from them; that her husband did not say anything to her when she told him that she had not signed the deed; and that she never spoke to him about it afterward. She also stated that her son, Herman, was about twenty-four years of age, and stated that she could not write.

Herman Brown testified: I am the son of the plaintiff, and was born October 26, 1883; on November 30, 1898, I was living with my parents in Clay County, Ark-

ansas; and I was present in the kitchen when J. C. Wells, a justice of the peace, asked my mother to sign a deed conveying the lands in question to Redwine and Miller.

When asked to state in his own way what was said and done, he answered, "Well, Jim Wells come into the kitchen and asked my mother to sign the deed, and said, 'Come here and sign this deed,' and my mother said, no, she wouldn't sign it; then he wrote a little there—I don't know what he wrote—he was writing setting at the eating table, and me and her were standing at the cook stove, and he asked her then to come and touch the pen, and she said, 'I will not do that, either,' and he got up and opened the middle door between the kitchen and front room, where my father and Miller and Redwine were settin', and he went back in there; as he went in the door, though, he said something in regard to that she could get the land back if she outlived Henry—meaning my father—and that was all that was said and done."

On cross-examination Herman Brown stated that after the men left, his father asked his mother if she signed the deed and that she replied that she did not, and said that he heard them talk on the subject three or four different times and that on each occasion his mother claimed that she did not sign the deed. He also stated that his mother knew that Miller and Redwine thought she had signed the deed. He was asked this question: "What did your father say when your mother told him afterward that Redwine and Miller thought she had signed the deed?" and answered, "Well, at one time I heard him say, "Just let it go and not say anything about it; it will cause Jim Wells (referring to the justice of the peace) to get into it.' " This, he stated, was six months or a year after they signed the deed.

J. C. Wells died about two years before the institution of this suit.

Henry Brown, husband of the plaintiff, took the acknowledgment of Miller and Redwine when they conveyed the land to the defendant Polk. Brown was at that time a justice of the peace.

The chancellor entered a decree alloting dower to the plaintiff in the lands in question and the defendant has appealed.

*G. B. Oliver,* for appellant.

Appellant unquestionably signed the deed, as appears from the certificate of the justice of the peace, as it is not to be presumed that the officer wilfully certified to a false fact. His purpose in going to appellee's house was to take her acknowledgment, and he did so, and delivered the deed to the vendees in the presence of appellee's husband.

Appellee's claim of dower is barred because she permitted the vendees to hold the land eight years without asserting her claim or intimating that she had a claim to the land, knowing that they were relying on her relinquishment as contained in the deed, and ignorant of the falsity of the facts. 69 Ark. 350; 37 Ark. 145.

The certificate of acknowledgment is conclusive of every fact appearing therein and evidence of what passed at the time is not admissible to impeach the certificate, except in cases of fraud. 53 Miss. 331; 38 Ark. 377; 41 Ark. 421.

Appellant is an innocent purchaser. Weight is given to this conclusion by the further fact that appellee's husband took the acknowledgment of one of his vendees, when they conveyed to Polk, and he did not inform Polk of the irregularity in the deed, and he never had any notice of same.

Appellee is guilty of laches.

*F. G. Taylor* and *J. S. Jordan,* for appellee.

Although appellant may have been an innocent purchaser for value, yet if appellee's claim to dower in the land was established, her title can not be impaired by the fact that appellant purchased without notice of her claim. 14 Cyc. 980; 1 Harr. (Del.) 385; 10 Ga. 321; 41 Ind. 586; 69 Ia. 397, 28 N. W. 657; 4 Green 453; 69 Me. 235; 14 Atl. 712; 55 N. C. 357; 28 S. C. 580, 68 S. E. 818; 17 Cent. Dig. title Dower, § 253.

· Appellee was not guilty of laches, as she necessarily had to wait until her husband's death before her dower interest attached, and she thereafter filed her suit in less than fifteen months.

Appellee's testimony that she did not sign the deed was corroborated by her son's. The alleged signature being by mark and not witnessed by the person writing it, it is not to be taken *prima facie* as genuine without other proof of signing. 49 Ark. 18; 51 Ark. 48; 70 Ark. 449; 38 Ark. 238.

HART, J., (after stating the facts). In the case of *Donahue* v. *Mills,* 41 Ark. 421, the court said that it was the settled doctrine of this court that though a wife may show against all the world that she never made any acknowledgment at all, and that the certificate is either a forgery or an entire fabrication of the officer, yet if she has actually made some kind of acknowledgment before an officer qualified to take it, his certificate will be conclusive as to the terms of the concomitant circumstances, in favor of all persons, who, themselves, innocent of fraud or of collusion to deceive or influence her, have taken the instrument on the faith of the certificate. See, also, *Petty* v. *Grisard,* 45 Ark. 117.

In the case of *Bell* v. *Castleberry,* 96 Ark. 564, the court held that the burden of showing that the certificate of acknowledgment of a deed was procured by fraud or duress rests upon him who attacks such certificate, and that the evidence to sustain such charge of fraud or duress must be clear, cogent and convincing.

(1) In the case before us, it is admitted that the defendant was an innocent purchaser for value of the land, but, notwithstanding this, the plaintiff, under the authorities above cited, might show that she never signed or acknowledged the deed. This brings us to the question of how far the certificate of acknowledgment of the justice of the peace was conclusive. The certificate of acknowledgment was regular on its face, and was made out in accordance with the terms of the statute. In the case note to *Ford* v. *Ford,* 7 Am. & Eng. Cases, p. 249, it is said that the authorities are unanimous in holding that in or-

der to impeach a certificate of acknowledgment, the evidence must be clear, cogent and convincing beyond reasonable controversy. In 1 Cyc., at page 623, it is also said that the testimony to impeach a certificate of acknowledgment must be clear and convincing. Many cases are cited, but an examination of the cases will show that the courts frequently fail to distinguish between those cases where the married woman actually appeared before an officer and made some sort of acknowledgment, defective though it may have been, and claims that the fact stated in the certificate are false and fraudulent, and those cases where the contention is made that the officer never acquired jurisdiction, power or authority because the married woman did not sign the instrument, and did not make any acknowledgment whatever before the officer. In our opinion, the weight of the evidence should not be affected by any particular rule peculiar to the subject, but rather, the court should be left to determine from all the circumstances disclosed whether the certificate of acknowledgment is true or false. This much may be said, however, under chapter 29 of Kirby's Digest, a proper acknowledgment is an essential part of the execution of a conveyance. The acknowledgment is an official act done under an official oath and is protected under the presumption the law necessarily indulges in favor of the acts of its own officers. Under our statute one of the means of evidence upon which a deed can be admitted to record is a certificate of proof or acknowledgment of an officer authorized by our statute to take such proof or acknowledgment. The burden of proof undoubtedly rests upon the person denying that one signed a deed or acknowledged it to show the falsity of the certificate which carries with it the usual presumption that the officer making it has certified to the truth, and has not been guilty of a wrongful or criminal action. Tested by this rule, we think the decision of the chancellor was erroneous.

(2) The deed in question was executed by Henry Brown, husband of the plaintiff, on November 30, 1898. On the next day the grantees went to his house and car-

ried with them a justice of the peace for the avowed purpose of taking the plaintiff's acknowledgment of her relinquishment of dower to the lands in question. The plaintiff testifies that she had on the previous day told her husband that she would not sign the deed. She denies that she ever had any other conversation with her husband in regard to the deed than the one just after the parties left the house. ' Her son attempts to corroborate her testimony, but his testimony contradicts hers in several respects, and especially in the point we have just mentioned. The record shows that the testimony of the plaintiff and her son was taken on the 13th day of September, 1913. The son testified that he was born on the 26th day of October, 1883. This would make him thirty years of age at the time he gave his deposition. The deed in question, was executed on the 30th day of November, 1898. His testimony, then, made him fifteen years of age at the time the deed was executed. At that age he might be capable of recalling what then occurred. It will be noted that both he and his mother testified that the land was to be preserved for him. He had a direct interest in the lawsuit. His mother testified that he was twenty-four years of age, and her testimony makes him nine years of age at the time of the execution of the deed. Her testimony as to his age is entitled to more probative force than his, and this is especially true, because her testimony may be considered as a declaration against her own interest. It is apparent that a child nine years of age would not be likely to remember fifteen years afterward matters which occurred at so early an age, and this is especially true in view of the fact that they never lived on the land thereafter.

Another cogent circumstance is that afterward, Henry Brown became a justice of the peace, and as such took the acknowledgment of Redwine and Miller, in 1906, when they conveyed the land to Polk. The record shows that the plaintiff knew that Redwine and Miller thought she had signed the deed, and that she never made any attempt to disabuse their minds of this fact. She knew the land was sold in 1906 to Polk, and that the deed exe-

cuted to Redwine and Miller, and that executed by them to Polk had been placed on record. Her husband died in 1912, and Wells, the justice of the peace who certified to her acknowledgment, died about two years before this proceeding was instituted. When we consider all of these facts and the contradictions between the testimony of the plaintiff, and that of her son, we are of the opinion that the plaintiff did not discharge, the burden of proof which rested upon her, and that the finding of the chancellor was clearly against the preponderance of the evidence. In short, we are of the opinion that the testimony in this case is of too loose and unsatisfactory a character to overcome the presumption of verity which attaches to the certificate of an officer properly certified in accordance with the statute. Therefore, the decree will be reversed with directions to the chancellor to dismiss plaintiff's complaint for want of equity.