FRAZIER *v.* LOFTIN.

4-5818 137 S. W. 2d 750

Opinion delivered March 4, 1940.

*McKay, McKay & Anderson,* for appellant.
*Wilson & Wilson,* for appellee.

HOLT, J. Appellants appeal from a decree of the Columbia chancery court, first division, denying their prayer for cancellation of a certain contract and deeds which they alleged they were induced to execute through fraud and misrepresentation.

July 13, 1938, appellant, Josie Frazier, and the other appellants, who are her children, entered into a written

contract with appellees, Madrid B. Loftin and G. D. Wilson, under the terms of which appellants agreed to execute, and did execute on the same date to appellee, G. D. Wilson, oil and gas leases on 120 acres of land in Columbia county, a mineral deed to a one-half interest in 80 acres of this land, and a warranty deed to the surface rights in 40 acres of the land.

The contract further provided that these deeds and leases should be placed in the hands of Madrid B. Loftin, as trustee, and were to be held by him and delivered to G. D. Wilson, the grantee, on condition that appellee, Wilson, should bear whatever expense was necessary to clear the title to said 120 acres of land, that provision of the contract being as follows: "The said Josie Frazier *et al.* has this day signed, executed and delivered unto Madrid B. Loftin, Trustee for G. D. Wilson, the above conveyances, which conveyances are to be delivered to the said G. D. Wilson when the title to any and all of the above real estate is clear; the said G. D. Wilson agreeing to pay whatever sums are necessary to completely clear the title to any or all of the above described tract of land."

Appellant, Josie Frazier, owned the south half (S½) of the southwest quarter (SW¼), section 36, township 17 south, range 21 west (80 acres), and her children, the other appellants, owned the northeast quarter (NE¼) of the southwest quarter (SW¼), section 36, township 17 south, range 21 west (40 acres), upon which they were living. This 40 acres was subject to Josie Frazier's dower and homestead rights, she being the widow of Doss Frazier, who died in 1924 and was survived by appellants.

There was a mortgage dated May 22, 1933, for $500 on the 80 acres owned by Josie Frazier.

It is contended by appellants that they entered into the contract in question with appellees, and on the same date executed the leases and deeds in Wilson's favor on the condition that he was to clear their title to an eighty-acre tract of land which they had previously lost through foreclosure and that they did not intend to contract affecting the 120 acres of land which they already owned

and to which the title was clear except for the mortgage of approximately $500 on eighty acres of same, and that they were induced to sign the contract and execute the leases and deeds by fraud on the part of appellees.

Appellees contend that all of these transactions were entered into in good faith, that appellants understood what they were doing and that no fraud was practiced. They contend that the consideration under the terms of the contract was the benefit that appellants would derive by the satisfaction of the mortgage indebtedness of approximately $500 on the lands and the clearing of the title to all of said lands, and the benefits flowing to appellee, Wilson, were the oil and gas leases, mineral interests, and the warranty deed to him of the surface rights to 40 acres of the land.

The record reflects that appellants executed the instruments in question. They were able to read and write. They knew the kind of instruments they were executing, but they testified that they thought the instruments dealt not with the 220 acres described, but with 80 acres which they had previously lost in a foreclosure sale. No forgery is claimed.

One of the appellants, Curley Ryan, testified, however, that in executing the contract and other instruments in question she knew what she was doing and was advised at every step. We quote from her testimony: "Q. And in the office, Curley, when you discussed the contract, didn't Mr. Loftin tell you not to sign anything, any papers at all without you knew all about it? A. Yes, sir. Q. And he told you that if you didn't know for you to go out and ask somebody about it? A. Yes, sir. Q. He was perfectly fair with you? A. Yes, sir. Q. And he went over the matter thoroughly and discussed the mineral deed and leases? A. Yes, sir. Q. And he said for you to ask any questions about anything you did not understand? A. Yes, sir. Q. You were treated fairly about this land, weren't you? A. So far as I know."

The contract in question makes no mention of the 80 acres claimed by appellants to have been lost at a foreclosure sale and refers only to the 120 acres of land in question. The lands mentioned in the contract are the

identical lands covered by the instruments executed by appellants to Wilson, grantee, and delivered to Loftin as trustee.

There is evidence that each of the appellants was given a copy of the contract, that it was read over to each of them before signing, that an explanation was made as to what each was signing, and the interest conveyed in the instruments deposited with trustee, Loftin, to be held by him until all of the requirements of the contract were carried into effect. This was the effect of the evidence of W. D. Stout, who notarized the deeds and leases, and Miss Linnie Neelan, and others. This evidence, however, is contradicted.

The record further reflects that appellee, Wilson, expended $94.75 on certain abstracts and investigations affecting the property in question and attempted to pay off the mortgage of approximately $500 above referred to, but was prevented from doing so by the conduct of appellants.

Appellants do not deny that shortly before appellee, Wilson, attempted to pay the amount due under the mortgage, they executed a deed to the 120 acres of land in question to Frank Love. No substantial consideration is shown. Their purpose in so executing this deed was to prevent appellee, Wilson, from obtaining title to the interest claimed by him under the terms of the contract.

The record in this case is voluminous. It would not be practicable to set it out more at length in this opinion. We have reached the conclusion, however, that the findings of the chancellor are not against the preponderance of the evidence.

The contract in question is unambiguous. It involves mutual obligations, as distinguished from a mere option. The consideration is set out.

We think it clear that no fraud or misrepresentation was practiced by appellees to induce the execution of the contract and other instruments which were acknowledged.

Before a court would be warranted in setting aside the solemn recitals in a deed or any written instrument

acknowledged, the *quantum* of testimony required must rise above a preponderance of the testimony. To do this the testimony must be clear, cogent and convincing. A mere preponderance is not sufficient.

It is our view that the execution of the contract (which was not acknowledged) was sustained by a preponderance of the evidence.

As to the other instruments: in 20 American Jurisprudence 1103, the textwriter, in stating the general rule, says:

"Section 1252. The general rule in civil cases that the party having the burden of proof must establish his case by a preponderance of the evidence is not of universal application. In certain classes of cases proof by a preponderance of the evidence is held to be insufficient.

"Section 1253. Proof of those issues as to which a stricter degree of proof than by a preponderance of the evidence is required by the courts is generally satisfied by 'clear and convincing' evidence, or evidence that is 'clear and satisfactory,' or evidence described by similar terms. For example, such strict degree of proof has been required in order to establish the existence of fraud, or to establish a parol trust in real or personal property, or, where reformation, cancellation, or rescission of a written instrument on the ground of fraud or mistake . . . is sought."

In *Morris* v. *Cobb,* 147 Ark. 184, 227 S. W. 23, this court said: "Again, appellant is in the attitude of impeaching the deed purported to have been executed and acknowledged by him. He could only do this by clear, cogent and convincing evidence. *Bell* v. *Castleberry,* 96 Ark. 564, 132 S. W. 649; *Polk* v. *Brown,* 117 Ark. 321, 174 S. W. 562. His evidence does not meet this requirement."

And in the recent case of *Burns* v. *Fielder,* 197 Ark. 85, 122 S. W. 2d 160, this court said: "The evidence necessary to impeach the solemn recitals of the deed must be clear and convincing. As was said in *Bevens* v. *Brown,* 196 Ark. 1177, 120 S. W. 2d 574, such evidence 'must be so clear that reasonable minds will have no doubt that such an agreement was executed. It must be so convinc-

ing that serious argument cannot be urged against it by reasonable people.'

"Tested in the light of this rule, we do not believe the purported agreement should have been accorded that high degree of verity which must attach to alleged verbal reservations or conditions in order to overthrow solemn recitals of a deed. Business transactions must have finality. Conveyances must not be exposed to the caprice of parol, nor explained away by less than that *quantum* of evidence which essentially attains the dignity of clarity, impressing conviction."

Applying the above rule, we do not think the evidence in the instant case measures up to that high degree that would justify the cancellation or setting aside of the deeds and leases in question.

The chancellor found in favor of appellees.

Since it appears, however, from the record and the decree of the chancellor that appellee, Wilson, was not required to, and has not paid the debt and has not caused the mortgage of approximately $500 on the 80 acres of land referred to, to be satisfied, it becomes necessary to reverse and remand this cause for modification of the decree.

Accordingly, the decree is reversed in part and the cause remanded with directions that, as a condition precedent to receiving the benefits of the several transactions, appellee, Wilson, be required to pay the debt in question and cause the mortgage to be satisfied within 30 days from the date this opinion becomes final.

Costs awarded against appellants.