Going *v.* Amos, Excr.

5-1763                                             321 S. W. 2d 212

Opinion delivered February 16, 1959.

[Rehearing denied March 23, 1959]

*E. L. Holloway,* for appellant.

*W. J. Schoonover, Robert H. Dudley* and *James A. Robb,* for appellee.

JIM JOHNSON, Associate Justice. Appellant, Sterline Going, as the widow of Lambert Going filed this suit against her mother-in-law, Appellee Sarah Going, to recover realty to which Sarah Going held a deed.

Trial in the Chancery Court resulted in a decree in all respects adverse to Sterline Going. From this decree Sterline Going appeals,[1] assigning five points for reversal.

The learned Chancellor issued a written opinion which so clearly states the issues and conclusions that we copy excerpts from it as follows:

"The plaintiff was twice married to the son of the defendant. The name of the son was Lambert Going.

"Lambert and Sterline were married in 1936 and lived for about nine years in Anderson, Indiana. Sterline did not work before her marriage but after she moved to Indiana with her husband they both worked and bought bonds and accumulated other funds in their joint names.

"In 1944 Lambert and Sterline returned to Corning and purchased a filling station and tourist court, taking title in the names of both parties, thereby creating an estate by the entirety. Shortly thereafter they acquired another piece of property (which is now in controversy) for a recited consideration of $3,250.00 and took title in their joint names also.

"In October 1945 there was issued to Lambert a policy of life insurance in the sum of $5,000.00 with Sterline as beneficiary.

"In 1946 they sold the first property that they acquired for a recited consideration of $13,000.00, cash in hand paid and within a few months began construction of a cafe on the west 100 feet of the property, the east 50 feet being their residence. Lambert and Sterline operated the cafe built on this property and in 1946 or 1947 Lambert became ill with cirrhosis of the liver . . .

---

[1] Pending this appeal, Mrs. Sarah Going departed this life. The cause was revived in the name of Guy Amos, Executor et al.

"On April 14, 1948, Lambert filed a suit for divorce against Sterline in the Western District of Clay County, alleging indignities, a separation on March 20th, and all property rights had been settled in said cause and the written property settlement was confirmed and approved. By the terms of the property settlement Sterline released and relinquished all claims which she had in and to the real property and the cafe and agreed that she would execute whatever papers and instruments were necessary to vest the fee simple title in Lambert. As a matter of fact, on April 13, 1948, the day before the divorce action was filed, the property settlement was entered into and Lambert and Sterline joined in a deed conveying the property to Bryan J. McCallen and the deed was purportedly acknowledged by both grantors before J. F. Arnold, a Notary Public. Arnold has since died and Sterline denies having acknowledged the execution of the deed. On the same day Bryan J. McCallen, single, executed a deed to the same property to Lambert Going and this deed was also acknowledged before Mr. Arnold. Both deeds were promptly recorded.

"In September 1948, Lambert and Sterline were remarried and on October 7, 1949, Lambert and Sterline executed two promissory notes payable to the defendant, Sarah A. Going, in the sum of $3,200.00 each. Sterline denies that there were two notes, but claims that one was but a copy of the other.

"In April of 1950 the Corning Bank, holder of a mortgage on the property was threatening foreclosure and on May 1, 1950, Sarah Going paid the indebtedness owing by Lambert and Sterline to the bank and on the same date paid various other bills owing by Lambert and Sterline totaling nearly $1,000.00. Sarah Going paid additional debts of Lambert after his death in the amount of $545.62.

"On May 1, 1950, the same day that Sarah paid the $2,600.00 to the Corning Bank and the other bills owing by Lambert and Sterline, Lambert and Sterline executed a warranty deed to Sarah, purportedly ac-

knowledged before Bryan J. McCallen, a Notary Public, and the deed was duly recorded.

"Lambert Going died on April 19, 1951, and this suit was not commenced until August of 1952.

"The plaintiff bases her claims on the allegations that the deed executed by her and Lambert to Bryan J. McCallen was not acknowledged and without consideration, leaving the lands involved in her and her husband as an estate by the entirety, of which she is the ultimate survivor; that she did not read the property settlement that she executed; that there was only one debt of $3,200.00 represented by the two notes of $3,-200.00 each; that the naming of Mrs. Sarah Going as beneficiary of the insurance policy[2] (it was changed a few days after the divorce decree of 1948) was merely to secure the various indebtednesses mentioned above; that the deed executed on May 1, 1950, was intended merely as additional security for the indebtedness, and that, therefore, it was in effect, a mortgage and that the same was not acknowledged before Bryan J. McCallen.

"As to the plaintiff's contention that she did not acknowledge the execution of the deed to Bryan J. McCallen on April 13, 1948, the Court is of the opinion that she has not produced the *quantum* of proof necessary to overcome the legal presumption to the effect that the recorded instrument is what it purports to be and that the certificates of acknowledgment are presumed to be true and correct. She does not contend that anyone took advantage of her, nor that she did not have an opportunity to read the property settlement and in view of the fact that she signed a property settlement agreeing to execute such instruments as would be necessary to convey fee simple title to her husband and that such settlement was confirmed and approved by the Court, her simple denial that she acknowledged

[2] Lambert had a right to give away his insurance policy and his motives in doing so are legally immaterial provided that the assignment did not involve an illegal, fraudulent or wager transaction. *Webster* v. *Telle*, 176 Ark. 1149, 6 S. W. 2d 28.

the same before a Notary Public who has since died is insufficient to overcome the legal presumption.[3]

"As to the deed executed by Lambert and Sterline on May 1, 1950, which she now contends was intended only as a mortgage,[4] it will be remembered that Lambert signed the same deed at the same time and showed Sterline, according to her testimony where to sign her name. She says that perhaps Lambert's sister told her where to sign and that the first page of the instrument was pushed up to where she could not see anything but the second page where she signed her name. Yet, the original deed, introduced in evidence, shows that it is marked plainly on its face as a Warranty Deed and consists of only one page. The testimony as to whether or not she acknowledged the execution of the instrument over the telephone is in sharp conflict, she being corroborated on the one hand by her relatives and the defendant being corroborated on the other hand by her relatives . . .

"The laws in this state are well settled to the effect that in cases of this kind the burden of proof is on the plaintiff in every particular and that the evidence necessary to overthrow the presumption of regularity of a recorded instrument must be clear, cogent and

[3] We said in *Polk* v. *Brown*, 117 Ark. 321, 174 S. W. 562: ". . . The acknowledgment is an official act done under an official oath and is protected under the presumption the law necessarily indulges in favor of the acts of its own officers. Under our statute one of the means of evidence upon which a deed can be admitted to record is a certificate of proof or acknowledgment of an officer authorized by our statute to take such proof or acknowledgment. The burden of proof undoubtedly rests upon the person denying that one signed a deed or acknowledged it to show the falsity of the certificate which carries with it the usual presumption that the officer making it has certified to the truth, and has not been guilty of a wrongful or criminal action. . . . " Also see: *Miles* v. *Jerry*, 158 Ark. 314, 250 S. W. 34; *Clifford* v. *Federal Bank and Trust Co.*, 179 Ark. 948, 19 S. W. 2d 1026; *Anthony* v. *Pennington*, 182 Ark. 1039, 34 S. W. 2d 219; *Jolly* v. *Meek*, 185 Ark. 393, 47 S. W. 2d 43.

[4] . . . the law presumes that the certificate of acknowledgment is what it purports to be . . . (See Footnote No. 3 *supra*.)

For cases determining whether a deed is a mortgage, see: *Beloate* v. *Taylor*, 202 Ark. 229, 150 S. W. 2d 730; *Tyler* v. *Morgan*, 214 Ark. 667; 217 S. W. 2d 606; *Newport* v. *Chandler*, 206 Ark. 974, 178 S. W. 2d 240; *Fox Brothers Hardware Co.* v. *Phillips*, 210 Ark. 483, 196 S. W. 2d 754; *Watson* v. *Clayton*, 203 Ark. 1097, 160 S. W. 2d 849.

convincing.[5] The testimony of the plaintiff fails to meet these requirements.

"Referring again to the plaintiff's contention that she did not acknowledge the deed to Bryan J. Mc-Callen, it will be noted that she does not deny that she entered into the property settlement and that her signature thereto was acknowledged before a Notary Public. As indicated by the terms of that instrument, she agreed to execute any instruments necessary to convey fee simple title and she now undertakes to avoid entirely the effect of that agreement. This, she will not be permitted to do."

The preponderance of the evidence supports the Chancellor's findings and decree.

Affirmed.

WARD and ROBINSON, JJ., dissent.

PAUL WARD, Associate Justice, dissenting. There is one issue in this case which was not considered by the trial court or the majority making the opinion, and I think that issue calls for a reversal.

The overlooked issue to which I refer is set out in appellant's brief as the 5th point: That the court erred in refusing to hold that if executed and acknowledged, the deed in question was in fact a mortgage.

This court has held numerous times to the effect that if a deed (regular in form) was intended to secure a loan for money, equity will construe it to be a mortgage. In the recent case of *Ehrlich* v. *Castleberry,* 227 Ark. 426, 299 S. W. 2d 38, the court in speaking of the execution of a deed stated: "If such transaction is security for a debt, then it is a mortgage." A headnote in *Beloate* v. *Taylor,* 202 Ark. 229, 150 S. W. 2d 730, expresses the rule this way: "If there be a debt subsisting between the parties to a deed, and it is their intention to continue the debt, the deed will be a mortgage." In *Hudgens* v. *Taylor,* 206 Ark.

---

[5] The rule that to reform a written instrument requires clear, convincing unequivocal and cogent testimony is so well known as to require no citation of authority.

507, 176 S. W. 2d 244, the court quoted from another decision, with approval, that—". . . in determining whether a deed absolute on its face is such, indeed, or only to be considered as a mortgage, the real question for the court's determination is what was the intention of the parties at the time." In this same connection the court said in *Holman* v. *Kirby*, 198 Ark. 326, 128 S. W. 2d 357, that if a deed is an equitable mortgage when executed it continues to be so.

Applying the well-established rule that the testimony to change a deed to an equitable mortgage must be clear and convincing, it is in order to examine the testimony in this case.

As I read the record the testimony here is not only clear and convincing but is uncontradicted, unchallenged, and admitted. On the point in question we have the testimony of only two witnesses. One is the grantor in the deed, appellant, and the other is the grantee in the deed, Mrs. Sarah Going.

Appellant's testimony is copied from the abstract:

"On the day before May 1st, 1950, Lambert told his mother he did not have any money and the bank was to foreclose the next day, May 1 and she said she would loan us the money and he could pay her back when he could.

"He was up at that time and in high hopes of getting well.

"She agreed to let us have the money and that had to be brought on the next day. At that time they were to give her a mortgage. This was to be on the part of the property on which the Cafe was located and the little house would not be included in the mortgage."

Mrs. Sarah Going's testimony with relation to the issue, as copied from the abstract was: (speaking of her son Lambert).

"He came over and told about the loan and would rather bump his brains out than ask for more money. If you would pay the bank off he would be awfully glad as

he didn't have a place to go. He said if you will I will deed you the property.

"I feel that I can get it started and we CAN PAY YOU A LITTLE along and if we don't you can put us out."

Mrs. Going further testified:

"Q. They were both present?

"A. Yes, sir.

"Q. What was the talk about?

"A. He said (referring again to Lambert) : 'Mother, they are going to foreclose on the property in Corning and I had rather bump my brains out against the wall as to ask you for more money for I have asked for so much.' Sterline and both of them come and he said, 'If you could pay the bank off I would be awfully glad for we won't have a place to go.' I said, 'Well, I don't know whether I can or not.' But anyway he said, 'If you will, I will deed you the property and then we will have a place to stay for certain. We know you wouldn't put us out and we can pay you maybe when I am able.' "

The only sensible conclusion I can draw from the above is that when Mrs. Going accepted the deed she did so knowing that appellant and her husband thought they had the right to pay her back and redeem the property. If I am right then the majority opinion condones and rewards Mrs. Going's deception. An additional reason why I don't like that result is that the entire dealings were among close relations, and also appellant, being under severe economic pressure was in no position to deal at arms length.

Justice ROBINSON joins in this dissent.