TOLER *v.* TOLER CONVALESCING HOME.

5-2831                                    364 S. W. 2d 680

Opinion delivered January 28, 1963.

[Rehearing denied March 4, 1963.]

*Levine & Williams,* for appellant.

*Brockman & Brockman, H. Murray Claycomb,* for appellee.

SAM ROBINSON, Associate Justice. In 1942 Lula R. Toler established a home for aged negroes in Pine Bluff. In 1946 she organized a corporation named the Negro Relief Association and conveyed the property on which the home was located to the corporation. In 1956, while Lula Toler was an officer of the corporation, the Negro Relief Association executed a deed to the property to the Toler Convalescing Home. There was attached to the deed a resolution of the Negro Relief Association showing that the name of that organization was changed to that of the Toler Convalescing Home.

Lula Toler, the dominant party connected with the convalescing home, died in 1958. The home continued to be operated by a board of directors until the members of the board resigned after having filed this suit to enjoin William H. Toler from interfering with the operation of the home and requiring him to return certain records. This is an appeal from the decree of the Chancellor granting the relief prayed.

The Chancellor gave a great deal of consideration to this case and wrote an able opinion with which we are in accord and which we accept. The opinion is as follows:

"This is an action involving 'an Old Folks' Home' for Negroes in Jefferson County. The Home was initiated by Mrs. L. R. Toler, who was a former Home Demonstration Agent for Jefferson County.

"Originally, the Home was financed by public donations. Mrs. Toler caused a charitable corporation to be formed which bore the name of 'The Negro Relief Association'. She then deeded some real property which she owned personally to this corporation.

"The Negro Relief Association, by resolution changed its name to the 'Toler Convalescing Home' and executed the deed on the real property it owned to the Toler Convalescing Home in August of 1956 by its purported president, T. B. Richards and secretary, Mrs. L. R. Toler. This deed with a copy of a resolution changing the name and authorizing the deed attached, were recorded in the records of Jefferson County. Hereafter the Negro Relief Association will sometimes be referred to as the Relief Ass'n. and The Toler Convalescing Home will be referred to as the Home. When money was borrowed from local banks a corrected deed with the signature of both T. B. Richards and L. R. Toler properly acknowledged was duly executed and recorded.

"L. R. Toler was the executive secretary-treasurer of the organization from its beginning in 1942 to her death in 1958; first, in the Relief Ass'n. and then in the Home.

"Though the operation first was supported by public donations, it later qualified under state and federal law to receive help from the public welfare and other sources. Its revenues at the time of the beginning of this action were largely from state and federal sources.

"When Mrs. Toler died August 17, 1958, the board of the Home met and appointed Kathryn Player to take her place. William H. Toler, defendant, appeared at this meeting of the board which occurred just a few days after the death of Mrs. Toler.

"On October 30, 1958, William H. Toler caused a meeting to be held of what was alleged to be the original board of the Relief Ass'n. This board selected him as secretary-treasurer to fill the alleged vacancy caused by the death of Mrs. L. R. Toler. Thereafter he attemtped

to take charge of the Home. The Board of the Home brought this action to stop his efforts and asked for a restraining order against him.

"It appears that after the commencement of the action that William H. Toler caused so much trouble with the various people involved with the operation of the Home that the members of the board — who were serving without salary — resigned at or prior to the first hearing of this cause. The funds which were being received from the state and federal authorities were not paid but were being held up by the authorities because of the confusion between the Home and William H. Toler. The sixty odd patrons of the Home were dependent entirely upon the welfare funds.

"At the first hearing it was apparent that this action could not be disposed of at that time so the Court on its own motion appointed a receiver. William H. Toler was present and was represented by legal counsel. He was represented first by Mr. Harold Flowers, later by Mr. Joe Holmes, both of the Pine Bluff Bar and lastly by Mr. J. Edward Jones of the Chicago Bar.

"Numerous hearings have been held prior to the trial. Judge Mullis and Judge Dawson each made various orders. It is not believed necessary to set out all of the manifold orders in detail.

"It is sufficient to say that William H. Toler was cited on several occasions prior to the trial and was found guilty of contempt at one hearing before a prior judge. His sentence was withheld based upon his future compliance with the orders of the Court. At the trial he showed every willingness to comply with the former orders of the Court. He turned over to the Clerk a typewriter, property of the Home, this being the last of the personal property which he had taken into his possession.

"No minutes of the Relief Ass'n. nor of the Home were introduced other than resolutions adopted by the respective boards. It is admitted that William H. Toler took all of the records then existing of the Home and

later delivered them to the Clerk of this Court. He testified that some of the records had been destroyed by Kathryn Player, a person who had been Mrs. Toler's assistant for several years and who was designated in writing by Mrs. Toler to succeed her in the event of her death or retirement.

"At the trial it developed that William H. Toler had caused a private corporation to be organized in which he held 6500 shares of 10,000 authorized to be issued. He admitted that this private corporation was formed for the purpose of operating the Home when the Relief Ass'n. should recover it. He volunteered the statement that he expected the Negro Relief Ass'n. to pay him for every day that he had spent in Pine Bluff, including the time of trial.

"Many pleadings and motions were filed which are not necessary to be set out in detail. Many of these motions and pleadings were doubtless inspired by the fact that the defendant's counsel at the trial was not familiar with our liberal practice. Probably these motions and pleadings would seem necessary to one trained in the more technical procedures of another state. William H. Toler abandoned at the trial any claim of personal interest and acted solely in his alleged capacity as secretary and treasurer for the Relief Ass'n.

"The primary issue in this action is whether or not the Negro Relief Ass'n may recover the real property from the Toler Convalescing Home which would carry with it the operation of the Home. Subordinate issues are:

1. Was the appointment of a reeciver by the Court on its own motion proper?

2. Was the restraining order against William H. Toler proper?

3. Was there fraud or duress in the execution of the deed and the authorizing resolution by the Relief Ass'n to the Home?

4. Was the action of the Relief Ass'n board proper and if so, did it take precedence over the act of the board of the Home?

"Both the Relief Ass'n and the Toler Convalescing Home were non-profit corporations organized in the Circuit Court of Jefferson County under our statutes. The Toler Home resulted from the adoption of a resolution by the Negro Relief. Ass'n changing its name to read 'Toler Convalescing Home' and which resolution adopted all of the articles of incorporation of the Relief Ass'n except its name, which resolution was duly recorded in the Jefferson County records. It is doubtful that this was tantamount to organizing a new corporation.

"Prior to the death of Mrs. Toler the Home had been receiving from the State Welfare Office payments that amounted to $75 per person monthly. There were in excess of sixty patrons of the Home when this action was instituted in 1958. At the time of trial in 1961, the monthly payments which were being paid to the receiver had been raised to $90 per person and the number of patrons had been increased to seventy-four. This monthly payment was in excess of $6,000.00.

"There can be no vested interest in these welfare payments regardless of whether the Relief Ass'n or the Home prevails here. The Welfare Department has the right to refuse payment if its requirements are not met. The fact is that it was withholding its monthly payments at the time of the first hearing. That fact was the reason that the Court appointed a receiver on its own motion because it desired to protect the patrons of the Home from the obvious difficulties which would follow further withholding of the funds.

## WHICH CORPORATION SHOULD PREVAIL?

"It is doubtful whether there are two corporations. Rather it would seem to be one corporation with a changed name. However, under the assumption that a change of names meant a change of corporation, deeds for the real property owned by the Relief Ass'n were executed and recorded conveying the same to the Home.

The deeds appear valid on their face except that one has a defective acknowledgment. The other deed was given to correct this defect.

"A contention is made that the original directors — A. A. Cooper and J. S. Smith — were still in office because the Relief Ass'n constitution provides '. . . that the first board of directors . . . hold office until their successors are elected and qualified.' It is contended that because there are no minutes showing the election of succeeding directors that A. A. Cooper and J. S. Smith are still de jure officers.

"To support this contention A. A. Cooper, the first president of the Relief Ass'n testified that no election of a successor to him had been held. However, his testimony was so vague on details that a president should know and was manifestly wrong in some matters, the Court could give but little weight to his statements.

"The Relief Ass'n adopted a resolution February 16, which resolution was duly recorded in the Circuit Clerk's office on March 8, 1951. This resolution showed J. S. Smith was president and L. R. Toler was secretary. Other names appear as directors on this resolution but two of these names, J. S. Smith and L. R. Toler were a majority of the original board of the Relief Ass'n. Under the Articles this constituted a quorum. Nowhere in this resolution is the name of A. A. Cooper.

"From the date of the resolution until October 30, 1958, A. A. Cooper made no assertion of record to his claim to be president of the Relief Ass'n. No credible evidence was offered to show that he took any action which would evidence the fact that he still claimed to be president of the Relief Ass'n prior to October 30, 1958. In addition Mr. T. X. Jones, a member of the Jefferson County Bar in good standing, testified that Mrs. Toler, executive secretary and treasurer, informed him when he was preparing a deed to convey the property from the Relief Ass'n to the Home, that A. A. Cooper was not president, that he had been removed from the board. The Court does not believe that A. A. Cooper was either presi-

dent or a member of the board at or after the execution of the resolution in '51 and above referred to.

"Whether it was necessary to execute deed after the change of the name is not important in this action because the defendant has not overcome the presumption of validity that follows an acknowledged deed which has been duly recorded. On the other hand, if it be one and the same corporation with a changed name then there could be no recovery. While the records of the corporate action under either name are scanty the actions of the Home as shown of record seems to be fuller than those of the Relief Ass'n and show some continuity of personnel and action. There were no records introduced showing that the Relief Ass'n attempted to take any action or claim to exist as such, from the time of the name change until two and a half months after the death of Mrs. L. R. Toler. The Court accepts the recorded resolutions and other actions in writing of the Home board as being done in good faith and with no ulterior motives.

## WAS THE APPOINTMENT OF A RECEIVER PROPER?

"If the Court had failed to appoint a receiver in 1958 in all probability the Home would have failed and its sixty odd patrons would have been thrown upon the community. Grasping for control of substantial monthly payments should not be permitted to injure patrons who were wholly dependent upon the welfare payments. The fact that the Home was indebted to the extent of $13,000, which has since been paid off by the receiver, was a strong circumstance indicating the necessity of a receiver.

## WAS THE RESTRAINING ORDER PROPER?

"William H. Toler, evidently under the impression that if he made enough trouble that the physical properties of the Home would be turned over to him voluntarily, had seized the records and made himself so generally disagreeable that the officers and directors resigned rather than to endure his conduct. To have permitted him to continue this conduct against the receiver would in all probability caused the receiver to have likewise resigned.

Unless his conduct was restrained the appointment of a receiver would have been useless.

## WAS THERE FRAUD OR DURESS IN THE EXECUTION OF THE DEED?

"The Relief Ass'n alleged fraud and duress in the execution of deeds and resolutions changing its name. The proof failed to substantiate these allegations.

## WAS THE ACTION OF THE RELIEF ASS'N BOARD IN ATTEMPTING TO NAME WILLIAM H. TOLER SECRETARY-TREASURER PROPER?

"Since the Court does not accept the claim of A. A. Cooper that he was president or a member of the board on and after 1951 when the resolution of the Relief Ass'n was signed by J. S. Smith as president, it follows there could not be a legal meeting in 1958 of the board of the Relief Ass'n for the reason that only one member, J. S. Smith of the original board was present. The Court accepts the actions of the Home board as binding and taking precedence over the attempted action of the Relief Ass'n in October of 1958.

### FINDINGS

"The Court finds the issues generally for the plaintiff and makes the following specific findings, to-wit:

"The Relief Ass'n may not recover from the Toler Convalescent Home. The title to the real property described as

> Lot Three in Block 10 of Geisreiter's Subdivision of the West Fractional Half of Section 6, Township 6 South, Range 9 West, Jefferson County, Arkansas,

is in the Toler Convalescing Home and the said Home has the right and responsibility of operating the said property and the home thereon situated.

## II

"The appointment of a receiver was proper and necessary.

## III

"The restraining order against William H. Toler was proper and necessary.

## IV

"There was no fraud or duress in the execution of the deed of conveyance by the Negro Relief Association to the Toler Convalescing Home nor in the execution and adoption of the resolution changing the name of the Relief Ass'n to that of the Home. The attempted act of the board of the Negro Relief Ass'n in 1958 does not take precedence over its prior act and is a nullity.

"In the case of *Bosson* v. *Women's Christian National Library Association,* 216 Ark. 334, 225 S. W. (2) 336, our Court made it clear that corporations of the type involved in this action are of the same nature as a charitable trust and said:

'Being public utilities of a very high order, charities are intimately associated with the state which exercises over them full supervision so that their property, funds and revenues shall not be diverted to any improper purpose, and that trustees and agents shall perform the duties assigned to them with honesty and fidelity and for the best advantages of the charitable uses designated by the donor or donors. For these ends the Chancery Courts have an original and inherent jurisdiction.'

"The Court retains jurisdiction of this case. It extends to the parties herein at period of thirty days in which to make suggestions to the Court as to the method of securing a proper board for the Toler Convalescing Home to operate the home when the receiver shall have been discharged.

"Receiver shall continue to operate said home until such a time as this litigation shall have been finally concluded, at which time the reeciver shall make a final accounting of her actions as such and when said accounting shall have been approved by the Court she shall be discharged from further responsibility as receiver.

34

"Mr. Murray Claycomb will prepare the precedent, submitting copies to other counsel at the same time that it is submitted to the Court. If no objection be made within five days, the same will be entered of record. If objections are raised, the Court will set an early date for passing upon them."

The attorney for the appellee convalescing home was appointed by the Chancellor and petitions this Court for the allowance of a reasonable fee for representing appellee on appeal. The petition is granted, and since the Chancellor is more familiar with the financial position of the parties, that Court is directed to allow such fee.

Affirmed.