Arthur D. YLINIEMI, et al.,
Respondents,

v.

Kenneth J. MAUSOLF, et al.,
Defendants and Third Party
Plaintiffs, Respondents,

Betty Rasinski, Third Party
Defendant, Appellant.

No. C4–84–2018.

Court of Appeals of Minnesota.

July 2, 1985.

John E. Valen, Little Falls, for respondents.

Michael P. Perry, Little Falls, for respondents.

Gordon Rosenmeier, Little Falls, for appellant.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FOLEY, Judge.

Betty Rasinski appeals the trial court's ruling reforming a 1962 deed between Clifford and Lois Boettcher and Ken and Viola Mausolf to include certain disputed riverfront property.

## FACTS

By a deed dated July 22, 1954 and recorded October 11, 1954, Clifford W. Boettcher and Lois L. Boettcher became owners of the following real estate in Morrison County, Minnesota:

The Southwest quarter of Southwest quarter (SW¼ SW¼) of Section Sixteen (16), Township One Hundred Thirty (130), Range Twenty-nine (29).

A series of transactions involving this land is the origin of this suit. In 1959, the Boettchers sold two acres to Kenneth J. Mausolf and Viola Mausolf on which they built their house. (See Parcel 1, Diagram A, attached as Illustrative Sketch.) This land is legally described as follows:

Commencing at the Southeast corner of the Southwest quarter of Southwest quarter (SW¼ SW¼) of Section Sixteen (16), Township One Hundred Thirty (130), Range Twenty-nine (29); thence go North on the East line of said SW¼ for a distance of 16 rods; thence go West on a line parallel to the South line of said Section 16 for a distance of 20 rods; thence go South on a line parallel with the East line of said SW¼ of SW¼ to the South line of said section, a distance of 16 rods; thence to East on the South line of said Section 16 for a distance of 20 rods to the place of beginning.

In 1962, the Mausolfs decided to purchase additional land from the Boettchers immediately north of their first parcel. (Parcel 2, Diagram A) This second parcel extends to the Mississippi River. A deed was executed by the Boettchers dated September 20, 1962 and recorded on September 26, 1962 in Book 154 of Deeds, page 526. It contains the following legal description:

*Parcel 1:* A part of the Southwest quarter of Southwest quarter (SW¼ SW¼), Section Sixteen (16), Township One Hundred Thirty (130), Range Twenty-nine (29), described as follows: Commencing at the Southeast corner of said SW¼ of SW¼, Section 16, Township 130, Range 29; thence go North on the East line of said SW¼ of SW¼ for a distance of 16 rods to the point of beginning of the parcel herein conveyed; thence continue North along said East line of the SW¼ of SW¼ to 40 rods *to the shore line of the Mississippi River;* thence go West 10 rods to a point; thence go South 40 rods to a point intersecting the North line of the real estate heretofore conveyed by Warranty Deed recorded in Book ·146 Deeds, page 507; thence go East 10 rods to the point of beginning of the land herein conveyed; and

*Parcel 2:* That part of the Southwest quarter of the Southwest quarter (SW¼ SW¼), Section Sixteen (16), Township One Hundred Thirty (130), Range Twenty-nine (29), described as follows: Commencing at the Southeast corner of the said SW¼ of SW¼; thence go West 20 rods to the point of beginning of the parcel herein conveyed; thence continue West 7 rods; thence go North 16 rods; thence go East 7 rods; thence go South 16 rods to the point of beginning of the said parcel of land herein conveyed.

(Emphasis added.)

In December 1969, the Boettchers sold to Ralph J. and Kathleen Carlson all of the land in the southwest section, less the land already sold to the Mausolfs. This was recorded in the office of the Register of Deeds of Morrison County in Book 146 of Deeds on page 507 and Book 154 of Deeds on page 526. (Parcel 3, Diagram A)

Both the Boettchers and the Carlsons knew that the Mausolfs used the riverfront property. Neither objected to that use by the Mausolfs.

On May 21, 1970, the Mausolfs conveyed the second tract described in the Boettcher deed, the West 7 rods, to Sylvester and Betty Rasinski. (Parcel 4, Diagram A)

Later in 1970, the Rasinskis bought from the Carlsons the East 28 rods of the SW section, "except those portions thereof sold and conveyed [to the Mausolfs] as described in deeds recorded in the Office of the Register of Deeds of Morrison County, Minnesota in Book 146 of Deeds on page 507 in Book 154 of Deeds on page 526."

(Parcel 3, Diagram A) The Rasinskis paid valuable consideration for this land.

In 1979 the Mausolfs listed their property for sale, stating the property was water frontage real estate with 165 feet on the Mississippi River. Relying on this affirmation, the Yliniemis (plaintiffs) bought the property. Thereafter, they occupied and maintained the riverfront property in the same fashion as had the Mausolfs.

The dispute in this action is over the "triangle" of riverfront property that both Rasinski and the Yliniemis claim they own. (Parcel A, Diagram A)

The Yliniemis sued the Mausolfs for reformation of the 1979 deed. The Mausolfs then began a third party action against the Rasinskis, claiming the original deed from the Boettchers to Mausolfs should be reformed to include the disputed riverfront property.

Both Ken Mausolf and Sylvester Rasinski were deceased prior to trial. The Boettchers were not available to testify.

At trial, counsel for the Mausolfs called John Mausolf (son of Viola and Ken Mausolf) to the stand to give his opinion regarding the ownership of the disputed land. Over objection, he was allowed to testify that he thought his parents owned the riverfront land. No foundation was given for Mausolf's expertise in real estate before this opinion was given.

Counsel for the Mausolfs also called neighbor Dan Wendland to the stand to give an opinion about the ownership of the disputed property. Over objection, the witness gave his opinion that the Mausolfs owned the disputed land.

Viola Mausolf testified that they bought the riverfront property from the Boettchers because they wanted access to the river. She said Boettcher needed money at the time and offered to sell the piece down to the river if they would buy another section, 7/10 of an acre along the road west of the original plot of land they bought in 1959.

Mausolf admitted she did not remember when the Rasinskis talked to them about the property. Mausolf's memory was unclear about all the property transactions. Moreover, she admitted she did show the original deed to the Rasinskis, which omitted the disputed property. When she discovered the deed omitted the riverfront land, she contacted the Boettcher's son, but nothing else was done. Finally, she was not sure whether her husband admitted to the Rasinskis that they had not purchased the riverfront property in order to save on tax payments.

Betty Rasinski testified that she had no objection to the Mausolfs and later the Yliniemis *using* the triangle. She also testified that on the day they closed the purchase of the SW property from Carlson, Viola Mausolf showed her the 1962 Boettcher-Mausolf deed. The deed showed the words, "along the shoreline" had been deleted prior to recording and then initialed by Boettcher. Viola Mausolf told Rasinski she did not know who made that change.

The effect of this alteration was to remove from the tract conveyed about 165 feet of shoreline and the triangular area abutting it. This is the area in dispute. Rasinski also testified that she had paid Ken Mausolf to take care of the triangle in 1975 and 1976.

The trial court reformed the original Boettcher deed. It found that due to a mutual mistake, the deed description did not conform to the agreement Boettcher and the Mausolfs reached. It based the finding of mutual mistake on circumstantial evidence, mainly the testimony of Viola Mausolf. The court also found that the Rasinskis were not good faith purchasers.

## ISSUES

1. Did the trial court err by reforming the 1962 deed?

2. Did the trial court err in finding the Rasinskis purchased the land from the Carlsons in bad faith?

3. Did the trial court err by allowing into evidence testimony by the Mausolfs' son and by their neighbor as to the ownership of the disputed land?

4. Was the trial court's finding regarding adverse possession error?

## ANALYSIS

■ 1. The question is whether reformation was proper under the facts of this case. A trial court's determination regarding reformation will not be disturbed on appeal unless it is manifestly contrary to the evidence. *Owatonna Country Club, Inc. v. Kohlmier*, 353 N.W.2d 227, 230 (Minn.Ct.App.1984), (citing *Metro Office Parks Co. v. Control Data Corp.*, 295 Minn. 348, 353, 205 N.W.2d 121, 124 (1973)).

■ A written instrument may be reformed if the following elements are proved: (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and; (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party. *Owatonna*, 353 N.W.2d at 230, (citing *Nichols v. Shelard National Bank*, 294 N.W.2d 730, 731, 734 (Minn.1980).

■ However, where a deed is regular on its face and duly recorded, the burden of proof is on the party attacking it to show facts establishing its invalidity. *McClung v. Steen* 32 F. 373 (D.Minn.1887). *See also Toler v. Lula Toler Convalescing Home*, 236 Ark. 24, 364 S.W.2d 680 (1963); *Going v. Amos*, 230 Ark. 86, 321 S.W.2d 212 (1959).

■ The trial court found that the Boettchers and the Mausolfs originally agreed the 1962 deed should include the riverfront property, so the mutual mistake was the omission of that property from the deed. The court also found the Rasinskis had notice that the Mausolfs believed they had purchased the land; therefore, the Rasinskis did not purchase in good faith. Based upon these findings, the trial court reformed the deed. The question is whether the court's findings are contrary to the evidence or the law. In a proper case, deeds in the chain of title could be re-

formed. *Neill v. Hake*, 254 Minn. 110, 93 N.W.2d 821 (1958). However, this holding does not apply here.

■ The trial court based its reformation ruling mainly on the circumstantial evidence of one party, Viola Mausolf. The evidence must be clear and convincing to justify reformation. *Kashmark v. Western Insurance Companies*, 344 N.W.2d 844, 847 (Minn.1984).

However, the record evidence here is not clear and convincing because Viola Mausolf admitted she did not remember certain crucial facts. For example, she did not remember when the Rasinskis told them they had purchased the riverfront property from Carlson. Nor was she sure whether her husband admitted to the Rasinskis that the Mausolfs did not purchase the disputed property, for tax reasons. However, Viola Mausolf did admit that the 1962 Boettcher-Mausolf deed did not include the disputed riverfront property.

There was no evidence to support a valid agreement which would supersede the deed. There was no written agreement between the Mausolfs and the Boettchers other than the deed. Furthermore, Mausolf's statement that they and the Boettchers intended the disputed land should be in the deed conflicts with her testimony that she was not sure if her husband ever denied they owned the land. It also conflicts with the recorded deed itself, reflecting the deleted phrase, "along the shoreline," and containing Boettcher's initials.

■ 2. In addition, the finding that the Rasinskis purchased the land in bad faith is not supported by the evidence. The question is what did the Rasinskis know, and when did they know it? Viola Mausolf does not remember when the Rasinskis told her they bought land, including the disputed property, from the Carlsons.

Betty Rasinski testified she had no objection to either the Mausolfs or the Yliniemis using the land since she was just going to "let it sit." Additionally, Rasinski testified she paid Ken Mausolf to take care of their property during 1975 and 1976. Even as-

suming the Rasinskis were on inquiry notice, both parties agree that the Rasinskis inquired about the riverfront property before they bought the land from Carlson, or at least inquired on the day of closing and were shown the Boettcher-Mausolf deed.

Thus, there is insufficient evidence to show Rasinski knew of Mausolf's claim prior to their purchase. There is no evidence to show the Rasinskis acted in bad faith.

■ 3. Findings of fact which are controlled or influenced by error of law are not final on appeal and will be set aside. *In Re Trust Under Will of Holden*, 207 Minn. 211, 291 N.W. 104 (1940); *See also In Re Murphy's Estate*, 269 Minn. 393, 406, 131 N.W.2d 220, 228 (1964). The trial court's findings need not be accepted because they were influenced by erroneous evidentiary rulings at trial.

The trial court allowed into evidence an opinion by John Mausolf, son of Ken and Viola Mausolf as to the legal ownership of the riverfront property:

Q: Based on your observations as to who [sic] and how the land was kept, without regard to the legal title, who did you think owned the triangle piece of land?

MR. ROSENMEIER: I object to that as calling for a conclusion of the witness.

THE COURT: He is qualified to give a conclusion.

MR. ROSENMEIER: I think the question was did he think ...

THE COURT: Under the new rules, he is entitled to give his opinion. He can answer ...

(By Mr. Perry, continuing) What was your opinion as to who owned the disputed area?

A: It's my father's and my mother's property.

The court also allowed into evidence an opinion by neighbor Dan Wendland on the ownership of the disputed land:

Q: Based on your observations, do you have an opinion as to who owned the triangle piece of property?

MR. ROSENMEIER: Objected to as calling for a legal conclusion from the witness.

THE COURT: That is a yes or no answer.

A: Yes.

(By Mr. Perry continuing) Do you have an opinion as to who owned it?

MR. ROSENMEIER: I object to that as without foundation.

(By Mr. Perry, continuing) And in your opinion, who owned it?

A: Kenny Mauslof. [sic]

Since these two witnesses were not qualified as experts on real estate, their testimony could be proper only under Rule 701, Minn.R.Evid., the rule on opinion testimony by lay witnesses.

■ Rule 701 restricts lay opinions to those which are rationally based on perceptions of the witness and are helpful to an understanding of his testimony or to the determination of a fact in issue. Allowing into evidence the testimony of these two witnesses was error because their opinions concerned legal conclusions, totally lacking in foundation. Neither witness was competent to render an opinion on title to real estate. Even the most liberal interpretation of the rules of evidence would not permit this opinion evidence. These findings contributed to the court's error in substantive matters. Since the findings are influenced by this error, we may set them aside. *Holden*, 207 Minn. at 227, 291 N.W. at 112.

4. The court also made a gratuitous comment in its memo regarding adverse possession:

Because the court's decision is based on reformation, it was not necessary to incorporate in its findings of fact and conclusions of law that the court would have found that Yliniemis had title to the disputed parcel by adverse possession. It should be noted, however, as between the parties all of the essential facts for Yliniemis to acquire title by adverse possession exist and if, for some unknown reason, the court's decision on reforma-

tion is not sustained on appeal, the undersigned would amend the pleadings to conform to the proof and hold that Yliniemis have title by adverse possession.

We construe this as a finding which is unsupported by the record. To establish title by adverse possession, one must show by clear and convincing evidence, an actual, open, hostile, continuous, and exclusive possession for 15 years. *Roemer v. Eversman,* 304 N.W.2d 653 (Minn.1981); *Wojahn v. Johnson,* 297 N.W.2d 298 (Minn.1980). Since Betty Rasinski said she had no objection to anyone using her land, and since she paid Mausolf in 1975 and 1976 to care for and mow this land, possession was neither adverse nor hostile. There is no evidence that the Mausolfs intended possession to be exclusive.

Therefore, a ruling based on adverse possession is error. In any event, there could be no successful adverse possession claim, since the Mausolfs did not hold the land adversely for 15 years.

Since the trial court's findings are not supported by the evidence, we reverse the ruling granting either the Yliniemis or the Mausolfs title by reformation. The title to the disputed riverfront property lies in Betty Rasinski.

### DECISION

We reverse the ruling granting reformation and remand to the trial court for proceedings conforming to this decision. Title to the disputed riverfront property rests in Betty Rasinski. Reversed and remanded.